No. 25-1640

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

Solutions in Hometown Connections *et al.*,

*Plaintiffs-Appellants*,

v.

Kristi Noem *et al.*,

*Defendants-Appellees.*

## APPELLANTS' UNOPPOSED MOTION FOR AN EXPEDITED BRIEFING SCHEDULE

Niyati Shah
Shalaka Phadnis
Asian Americans Advancing
  Justice—AAJC
1620 L St. NW, Suite 1050
Washington, DC 20036
(202) 296-2318

Jose Perez
Rex Chen
Latino Justice PRLDEF
475 Riverside Dr., Suite 1901
New York, NY 10115
(212) 219-3360

Bradley Girard
Sarah M. Rich
Adnan Perwez
Robin F. Thurston
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090

Nickole Durbin-Felix
Latino Justice PRLDEF
4700 Millenia Blvd., Suite 500
Orlando, FL 32839
(321) 247-6657

*Counsel for Appellants*

Appellants—ten nonprofit organizations—respectfully move to expedite this appeal under Local Rule 12(c) because, as the record makes plain, they are suffering immediate and irreparable harm. The Nonprofits have conferred with Appellees—government agencies and officials.[1] The Government does not believe expedition is necessary but does not oppose the proposed briefing schedule. For the reasons explained below, without this Court's swift intervention, the Nonprofits' injuries will not be able to be remedied—either after the normal course of an appeal or full trial before the district court.

## BACKGROUND

**1.** The Nonprofit appellants provide critical services to immigrant populations across the country—services that Congress chose to support by appropriating funding for DHS's Citizenship and Integration Grant Program. At the urging of the Government, the Nonprofits applied for, and received, CIGP grants. Relying on the CIGP, the Nonprofits created programs to provide services—including citizenship instruction, English-as-a-Second-Language courses, and legal representation—to help lawful permanent residents apply for U.S. citizenship. Every few months, the

---

[1] For the sake of ease, the Nonprofits refer to all Government Appellees-Defendants collectively as the Government.

1

Nonprofits seek reimbursement from the Government for the CIGP work that they have completed. If the Nonprofits have met the grant benchmarks, the Government then reimburses them.

Despite urging and expecting the Nonprofits to build programs and offer services to clients for two-year periods, in January the Government shut down the entire CIGP in the middle of the Nonprofits' grant terms. First, the Government froze all CIGP funds, based on three unreasonable and unexplained concerns of DHS Secretary Kristi Noem, including that grants that help *lawful* permanent residents move toward full citizenship somehow encourage "illegal immigration." When the Nonprofits sued, and two days after they moved for preliminary relief, the Government shuttered the entire CIGP through a mass email to all CIGP funding recipients and subsequent boilerplate letters to each organization.

**2.** After the district court denied preliminary relief—based on the court's reading of the first complaint, which was filed before the Government sent the letters shuttering the entire CIGP—the Nonprofits filed an amended complaint and a motion for a preliminary injunction or, in the alternative, a stay under Section 705 of the APA. The Nonprofits asked the district court to enjoin the dismantling of the CIGP as unconstitutional, as violating the

2

APA, and as ultra vires.[2] They explained that as part of the dismantling of the entire CIGP, the Government agreed to reimburse the Nonprofits for all back-owed money through the date of the dismantling email. So the only relief that the Nonprofits sought was prospective—specifically, an opportunity to carry out the programs that they had built at the Government's urging, including the ability to seek future reimbursement when, and if, they could show that they had completed the CIGP-required work.

**3.** The district court denied the motion, concluding that its jurisdiction was likely ousted by the Tucker Act. The Nonprofits had repeatedly pointed out that this lawsuit is not seeking compensation for work already performed. And despite the Government's assertion that this is, at bottom, a case about money damages, the Government failed at every turn to point to any actual money damages at issue. Nevertheless, the district court concluded that the Nonprofits' request to maintain a program that would, among other things, allow them to seek *future* reimbursement for work done in the *future* was "monetary in nature and backward-looking." Op. 20 (ECF

---

[2] The Nonprofits' complaint raised two claims that were not at issue in the motion for preliminary relief—a Procedural Due Process and First Amendment retaliation claim. Those claims are not at issue on this appeal.

70). So the district court concluded that the Nonprofits' claims likely belonged in the Court of Federal Claims.

Importantly, however, the district court did not find that the Nonprofits had failed to satisfy the other requirements for preliminary relief. Indeed, at oral argument the district court acknowledged that the Nonprofits "made [their] point on irreparable harm" and that "there's a pretty solid record on that point." Hearing Tr. 57-58. As to the merits of the Nonprofits' arbitrary-and-capricious argument, the district court thought "the plaintiffs have a very valid point." *Id.* at 29. Likewise, in response to the Government's argument that it has discretion to outright cancel entire grant programs, the district court explained that the Government's position was "not a view that the Court shares." *Id.* at 47.[3]

## REASONS TO GRANT THE MOTION

Under 28 U.S.C. § 1657(a), the courts "shall expedite . . . any action for temporary or preliminary injunctive relief." *See also* Fourth Circuit Rule 12(c). An expedited appeal is appropriate here because the Government's

---

[3] The transcript of the hearing is attached to this motion. The parties are awaiting a corrected transcript, which will correct typographical errors, including the misidentification of counsel at certain points. *See, e.g.*, Hearing Tr. 67 (identifying counsel for the Nonprofits instead of counsel for the Government). The parties intend to file the corrected transcript as part of the joint appendix.

4

decision to dismantle a congressionally funded program is causing the Nonprofits irreparable harm. Irreparable harm occurs "when the threatened injury impairs the court's ability to grant an effective remedy," *Int'l Refugee Assistance Project v. Trump*, 883 F.3d 233, 270 (4th Cir. 2018), *vacated on other grounds*, 585 U.S. 1028 (2018), especially when actual and imminent harm cannot be "fully rectified by the final judgment after trial." *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 216-18 (4th Cir. 2019). As the Nonprofits explained to the district court, they are suffering at least three kinds of irreparable harm.

*First*, the Government's shuttering of the CIGP has already forced—or will imminently force—the Nonprofits to shut down entire naturalization programs and cut staff. As one example, the English Skills Learning Center will be forced to shutter its entire naturalization program by the end of this month. *See, e.g.*, PI Br. at 26 (ECF 53-1). And the Hebrew Immigrant Aid Society of Pennsylvania will have to lay off 17 members of its staff. *See id.*

*Second*, the Nonprofits are incurring costs that they will never be able to recover. Because the Government pulled the plug on CIGP in the middle of the grant terms, the Nonprofits have had to tap into limited reserve funds to keep those programs going—especially to continue ethically required legal representation of clients they took on under the CIGP's requirements. *See id.*

5

at 27. To fill those funding holes, the Nonprofits have had to divert significant resources to emergency fundraising—the costs of which will not be recoverable under a final judgment enjoining the shuttering of CIGP because CIGP reimburses only for specific grant-required costs. *Id.*

*Third*, the Nonprofits are suffering reputational harm that cannot be rectified after final judgment. *See, e.g.*, *id.* at 25-29; PI Reply Br. at 13-15 (ECF 66). The Nonprofits have spent years building trust with hard-to-reach communities who have a dire need for naturalization services. These communities understandably are losing trust in the Nonprofits when the Nonprofits suddenly cancel classes, shut down programs, and change from free to fee-based services. *See id.* at 14. The Government's shuttering of CIGP is likewise damaging the Nonprofits' relationships with subgrantee organizations who are unlikely to be able or willing to enter into a new subgrantee relationship down the road if the Nonprofits win a final judgment. *See id.* And funders are wary to fund the Nonprofits because they believe that the loss of CIGP funds reflects poorly on the health and stability of the Nonprofits. *See id.* at 14-15.

At bottom, the Government has put the Nonprofits in an impossible position that cannot be remedied months or years from now by a final judgment. The Nonprofits do not have the financial ability to continue their

CIGP programs while this case proceeds without prompt reimbursement from the Government for that work. So belated injunctive relief after a final judgment in their favor would award the Nonprofits the empty opportunity to carry out grant-funded programs that they will have already shuttered—losing staff, subgrantees, and clients as a result. And any ability to seek monetary relief in the form of reimbursements under the CIGP months or years from now would likewise be meaningless because the Nonprofits do not have the financial ability to continue doing CIGP-required work for the time that it will take to reach a final judgment. Put simply, absent an expedited appeal and a preliminary injunction, any ultimate victory for the Nonprofits risks being a pyrrhic one.

## PROPOSED SCHEDULE

The parties have conferred and suggest the following schedule:

- Nonprofits' opening brief (and joint appendix): June 24;
- Government's response brief: July 15;
- Nonprofits' reply brief: July 22.
- Oral argument: The Nonprofits and the Government do not believe that oral argument is necessary. But if oral argument would aid the Court in deciding the appeal, counsel will be available for an argument date that is convenient to the Court.

                                                     Respectfully submitted,

                                                     /s/ *Bradley Girard*

| | |
|---|---|
| Niyati Shah | Bradley Girard |
| Shalaka Phadnis | Sarah M. Rich |
| Asian Americans Advancing Justice—AAJC | Adnan Perwez |
| 1620 L St. NW, Suite 1050 | Robin F. Thurston |
| Washington, DC 20036 | Democracy Forward Foundation |
| (202) 296-2318 | P.O. Box 34553 |
| | Washington, DC 20043 |
| Jose Perez | (202) 448-9090 |
| Rex Chen | |
| Latino Justice PRLDEF | Nickole Durbin-Felix |
| 475 Riverside Dr., Suite 1901 | Latino Justice PRLDEF |
| New York, NY 10115 | 4700 Millenia Blvd., Suite 500 |
| (212) 219-3360 | Orlando, FL 32839 |
| | (321) 247-6657 |

                                       *Counsel for Appellants*

June 6, 2025

## CERTIFICATE OF COMPLIANCE

In accordance with Federal Rule of Appellate Procedure 32(g)(1), I certify that this motion:

(i) complies with the type-volume limitation of Rule 28(d)(2) because it contains 1,493 words including footnotes; and

(ii) complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Word 365, set in Book Antiqua font in a size measuring 14 points or larger.

*/s/ Bradley Girard*