No. 25-1640

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

———————

SOLUTIONS IN HOMETOWN CONNECTIONS, *et al.*,

*Plaintiffs-Appellees*,

*v.*

KRISTI NOEM, *et al.*,

*Defendants-Appellants.*

———————

On Appeal from a denial of a preliminary injunction from the United States District Court for the District of Maryland
Case no. 25-cv-885, Hon. Lydia K. Griggsby

———————

## BRIEF OF *AMICUS CURIAE* RMC RESEARCH AND CHILD TRENDS, INCORPORATED IN SUPPORT OF APPELLANTS AND REVERSAL

———————

DANIEL F. JACOBSON
KYLA M. SNOW*
JACOBSON LAWYERS GROUP PLLC
1629 K Street NW, Suite 300
Washington DC, 20006
(301) 823-1148
dan@jacobsonlawyersgroup.com

* Not admitted in the District of Columbia. Practice limited to matters before U.S. courts.

*Counsel for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *Amicus Curiae* states that it has no parent corporation and no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

INTERESTS OF AMICUS CURIAE ...................................................1

SUMMARY OF THE ARGUMENT ...................................................2

ARGUMENT ...................................................5

   I.   The District Court's Tucker Act Analysis was Erroneous as to the Constitutional Claims ...................................................5

      A. The Government's Jurisdictional Arguments Do Not Apply to Freestanding Constitutional Claims ...................................................5

      B.  Sovereign Immunity Does Not Apply to Appellants' Constitutional Claims ...................................................6

      C.  The District Court's Opinion Contravenes *Webster v. Doe* ...................8

   II.   The Court Should Not Follow the Erroneous Emergency Stay Decision in *Sustainability Institute* ...................................................11

   III.   *Dalton* Does not Displace Webster or Apply Here ...................14

CONCLUSION ...................................................18

# TABLE OF AUTHORITIES

## Cases

*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015)..................7, 11, 12

*Board of Governors of Fed. Reserve System v. MCorp Financial*, Inc., 502 U.S. 32 (1991) ......................................................................................12

*Cf. Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012) ...................................10

*Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996)..............7, 16, 17

*Child Trends, Inc. v. Department of Education*, No. 8:25-cv-01154 (D. Md.).....1, 2

*Collins v. Dep't of the Treasury*, 83 F.4th 970 (5th Cir. 2023)...............11

*Collins v. Yellen*, 594 U.S. 220 (2021).................................................8, 15

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099 (D.C. Cir. 2022).................................................................................6

*Dalton v. Specter*, 511 U.S. 462 (1994) ...........................................*passim*

*Demore v. Kim*, 538 U.S. 510 (2003) ..................................................10

*Department of Education v. California*, 145 S. Ct. 966 (2025) ........................3, 5, 6

*Fisher v. United States*, 402 F.3d 1167 (Fed. Cir. 2005) .........................9

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010) .....8, 13, 14

*Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022)................................10

*Ham v. Breckon*, 994 F.3d 682 (4th Cir. 2021) ....................................11

*In re Aiken Cnty.*, 725 F.3d 255 (D.C. Cir. 2013) .........................5, 17, 18

*In re al-Nashiri*, 791 F.3d 71 (D.C. Cir. 2015) ...................................10

*INS v. St. Cyr*, 533 U.S. 289 (2001) ......................................................10

*LeBlanc v. United States*, 50 F.3d 1025 (Fed. Cir. 1995) .......................3, 9

*Marozsan v. United States*, 852 F.2d 1469 (7th Cir. 1988)....................10

*Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982)........................6

*Strickland v. United States*, 32 F.4th 311 (4th Cir. 2022) ......................3, 7

*Sustainability Institute v. Trump*,
  No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025) ...........................1, 2, 11

*Webster v. Doe*, 486 U.S. 592 (1988)..................................................................*passim*

*Widakuswara v. Lake*, No. 25-5144,
  2025 WL 1288817 (D.C. Cir. May 3, 2025) ........................................................13

*Widakuswara v. Lake*,
  No. 25-5144, 2025 WL 1521355 (D.C. Cir. May 28, 2025)................................13

**Statutes**

5 U.S.C. § 702 ...............................................................................................................3, 5

28 U.S.C. § 1491(a)(1) ..................................................................................................9

**Other Authorities**

William Baude *et al.*, Hart and Wechsler's The Federal Courts and the Federal
  System (8th ed. 2025) ...........................................................................................10

## INTERESTS OF AMICUS CURIAE[1]

Child Trends, Inc. and RMC Research are the plaintiffs in *Child Trends, Inc. v. Department of Education*, No. 8:25-cv-01154 (D. Md.). In that case, they challenge, *inter alia*, the termination of their grants by the Department of Education. Like the plaintiffs in the instant case, Child Trends and RMC Research assert constitutional separation of powers challenges to their grant terminations.

In a Memorandum Opinion dated June 11, 2025, the district court in *Child Trends* declined to enter a preliminary injunction against the grant terminations, solely on the basis of this Court's unpublished stay decision in *Sustainability Institute v. Trump*, No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025). The district court recognized that *Webster v. Doe*, 486 U.S. 592 (1988) requires an express statement from Congress where a plaintiff would be left with no forum to bring a constitutional challenge. *See Child Trends*, No. 8:25-cv-01154, ECF No. 41 at 16 n.12 (D. Md. June 11, 2025). But the court held that, "[i]n light of the panel decision in *Sustainability Institute*, the Court is unable to conclude that [it] has jurisdiction over Plaintiffs' Terminations Claims." *Id.* at 16-17.

---

[1] All parties have consented to the filing of this brief. RMC Research and Child Trends affirm that no counsel for a party authored this brief in whole or in part, no counsel or party made a monetary contribution intended to fund the preparation or submission of this brief, and no person other than RMC Research and Child Trends or its counsel made such a monetary contribution.

The instant appeal raises the same question as in *Child Trends* and *Sustainability Institute*: whether the Tucker Act strips district courts of jurisdiction to hear constitutional challenges against grant terminations when the grantees cannot challenge the constitutionality of the terminations in the Court of Federal Claims. Child Trends and RMC Research thus have a direct interest in the outcome of this appeal. Child Trends and RMC Research submit this brief as *amicus curiae* to discuss why the district court had jurisdiction over Appellants' separation of powers claims, and why *Dalton v. Specter*, 511 U.S. 462 (1994), does not foreclose those claims either.

## SUMMARY OF THE ARGUMENT

This Court should reverse the district court's holding that the Tucker Act stripped the court of jurisdiction to hear Appellants' constitutional separation of powers claims. The government has effectively conceded in the parallel appeal in *Sustainability Institute v. Trump*, No. 25-1575 (4th Cir.), that the district court in this case and the stay panel in *Sustainability Institute* erred in concluding that the Tucker Act strips district court jurisdiction over constitutional claims.

The district court incorrectly applied its analysis of the Tucker Act's impact on Administrative Procedure Act (APA) claims to Appellants' constitutional claims. The court's analysis centered on an issue specific to the APA—whether the Tucker Act "impliedly forbids" the APA's waiver of sovereign immunity from

applying for purposes of 5 U.S.C. § 702. The court applied case law, including *Department of Education v. California*, 145 S. Ct. 966 (2025), addressing that APA-specific question.

But that precedent has no bearing on freestanding *constitutional* claims, for two reasons. First, as this Court has held, "sovereign immunity does not apply" where plaintiffs allege that federal officials "acted unconstitutionally." *Strickland v. United States*, 32 F.4th 311, 363 (4th Cir. 2022). The court missed that the basis upon which it found no jurisdiction over Appellants' APA claims—sovereign immunity—is wholly inapplicable to Appellants' separation of powers claims.

Second, and more fundamentally, Supreme Court precedent requires that Congress expressly, not impliedly, strip a district court of jurisdiction to hear constitutional claims where the plaintiffs would have no alternative forum to bring those claims. *See Webster v. Doe*, 486 U.S. 592 (1988). That is the case here, because Appellants cannot bring separation of powers claims in the Court of Federal Claims. *See LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995). The Tucker Act does not expressly strip district courts of jurisdiction to hear grant termination claims, and thus *Webster* controls here.

Indeed, "to avoid the serious constitutional question that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim," *Webster*, 486 U.S. at 603, the Supreme Court has *never* held

that a federal statute strips a plaintiff of a forum to challenge the constitutionality of a government action. There is no basis to read the Tucker Act to be the first ever such federal statute, which would likely render the Act unconstitutional.

Perhaps recognizing that *Webster* precludes its Tucker Act defense for constitutional claims, the government has shifted gears in the parallel *Sustainability Institute* appeal. Relying on *Dalton v. Specter*, 511 U.S. 462, the government now argues that separation of powers claims in grant termination cases are not "bona fide" constitutional claims. If the government makes the same argument here, it will be a confession that the district court erred in denying relief on the constitutional claims based on the Tucker Act.

As for the government's argument under *Dalton*, this Court should reject it. Courts including the D.C. Circuit have held that *Dalton*'s holding is limited to claims related to discretionary presidential decisions. The decision stands for the proposition that the President's decision is unreviewable when left to his complete discretion, and plaintiffs cannot evade that restriction by alleging a "separation of powers" violation based on some failure to adhere to a statutory provision related to the decision. In contrast, and as the D.C. Circuit has also made clear, plaintiffs may assert separation of powers claims that are based on an agency's refusal to comply with "statutory *mandates*." *In re Aiken Cnty.*, 725 F.3d 255, 259 (D.C. Cir. 2013) (Kavanaugh, J.).

This case involves such statutory mandates. Exercising its constitutional power of the purse, Congress required through appropriations acts that the Department of Homeland Security (DHS) spend specific sums of money on the Citizenship and Integration Grant Program (CIGP). The grant terminations at issue directly result in DHS violating those mandates. The terminations strike at the core of the separation of powers.

## ARGUMENT

### I. The District Court's Tucker Act Analysis was Erroneous as to the Constitutional Claims

#### A. The Government's Jurisdictional Arguments Do Not Apply to Freestanding Constitutional Claims

In this case and the wave of other recent cases challenging the termination of grants, the government's Tucker Act jurisdictional arguments have all been specific to APA claims—and in particular whether the APA's waiver of sovereign immunity applies. Under 5 U.S.C. § 702, the APA's waiver of sovereign immunity does not apply if another statute "expressly or impliedly forbids" the relevant APA claim, and the government's argument has been that the Tucker Act "*impliedly*" forbids APA claims challenging the termination of grants. *See* Gov't Br. at 12-14, *Dep't of Educ. v. California*, 145 S. Ct. 966 (2024) (No. 24A).

In support of this argument, the government has relied on a series of cases originating from the D.C. Circuit applying a two-part test for whether the Tucker

Act "impliedly forbids" a particular APA claim (for purposes of the APA's sovereign immunity waiver). *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1106-08 (D.C. Cir. 2022); *see Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982) (setting forth D.C. Circuit test that looks to the "source of the rights" for a claim and the "type of relief sought").

The government has also relied extensively, in this case and others, on the Supreme Court's emergency docket order in *Department of Education v. California*, 145 S. Ct. 966. That case involved only an APA arbitrary-and-capricious claim, and the Supreme Court's order was strictly cabined to "the APA's limited waiver of immunity." *Id.* at 968.

None of the government's jurisdictional arguments, or the precedent upon which the government has relied, has any applicability to freestanding constitutional claims. That is so for two independent reasons: (1) sovereign immunity is not an issue for claims seeking to enjoin federal officials from acting unconstitutionality; (2) under *Webster v. Doe*, the Tucker Act must expressly—not impliedly—preclude district court jurisdiction over constitutional claims, because Appellants have no other forum to assert their constitutional claims.

## B. Sovereign Immunity Does Not Apply to Appellants' Constitutional Claims

The Fourth Circuit has been clear that "sovereign immunity *does not apply* when a plaintiff files suit seeking equitable relief against federal officials . . .

alleging that those officials exceeded the scope of their authority and/or acted unconstitutionally." *Strickland*, 32 F.4th at 363 (emphasis added). With such claims, the official's actions "are considered individual and not sovereign actions." *Id.* "So, there is no sovereign immunity to waive—it never attached in the first place." *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1329 (D.C. Cir. 1996); *see also Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) ("The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity." (Scalia, J.)).

The district court failed to recognize or apply this black-letter law. The court's analysis focused almost entirely on sovereign immunity and "the interplay between the APA and the Tucker Act." JA739-41. Then, in a single sentence, the court simply lumped Appellants' separation of powers and ultra vires claims together with the APA claims, without any recognition of the critical distinction with respect to sovereign immunity. JA746.

Outside of sovereign immunity, the district court pointed to no legal basis for concluding that it lacked jurisdiction over Appellants' constitutional claims. The court pointed to no legal doctrine or precedent for finding that Congress's grant of jurisdiction to an Article I court to hear certain other types of claims— namely, breach of contract claims—deprives Article III courts of their historic jurisdiction to hear claims against federal officials for violating the Constitution,

including the "separation of powers." *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010). The Supreme Court has made clear that, "whenever a separation-of-powers violation occurs, any aggrieved party with standing may file a constitutional challenge." *Collins v. Yellen*, 594 U.S. 220, 245 (2021).

### C. The District Court's Opinion Contravenes *Webster v. Doe*

The district court indeed *must* have jurisdiction over Appellants' constitutional claims here, because otherwise Appellants would have no forum to assert their constitutional claims. Where such would occur, and to avoid having to assess whether such an outcome would be unconstitutional, *Webster v. Doe* and its progeny mandate an express—not implied—statement from Congress that it intends a statute like the Tucker Act to strip district court jurisdiction over constitutional claims. The Tucker Act contains no such clear statement, and the district court erred in applying a test that assesses whether the Tucker Act "impliedly" precludes certain claims.

There can be no dispute that Appellants cannot bring their separation of powers claims in the Court of Federal Claims. Under the relevant Tucker Act provision, 28 U.S.C. § 1491(a)(1), federal contractors may bring constitutional claims in the Court of Federal Claims only if the relevant constitutional provision is "money-mandating," meaning it entitles a particular individual to a particular

sum of money. *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005). The Federal Circuit has held that plaintiffs may *not* assert separation-of-powers claims under § 1491(a)(1), because the relevant constitutional provisions are not money-mandating. *LeBlanc*, 50 F.3d at 1028. Thus, if this Court lacks jurisdiction over Appellants' constitutional claims, Appellants would have no judicial forum to assert constitutional claims.

But *Webster v. Doe* held that "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." 486 U.S. at 603. The Court "require[s] this heightened showing in part to avoid the serious constitutional question that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Id.* (quotations omitted). Here, the Tucker Act contains no clear statement that it precludes district court from hearing constitutional challenges to the administration of a grant, including grant terminations.

*Webster* is binding on this Court. The Supreme Court has recently—and repeatedly—relied on *Webster*'s clear-statement rule to reject arguments that would result in a statute stripping district courts of jurisdiction over constitutional claims. *See, e.g.*, *Garland v. Aleman Gonzalez*, 596 U.S. 543, 554 (2022); *Demore v. Kim*, 538 U.S. 510, 517 (2003); *cf. Elgin v. Dep't of Treasury*, 567 U.S. 1, 10 (2012) (distinguishing *Webster* because the statute allowed for the constitutional

claims in an alternate forum). To the knowledge of undersigned counsel, the Supreme Court has never read a statute to preclude a party from having any judicial forum to challenge the constitutionality of a government action, to "avoid squarely facing" the "serious constitutional question" that such a statute would present. William Baude *et al.*, Hart and Wechsler's The Federal Courts and the Federal System 462 (8th ed. 2025).

This Court should not go where the Supreme Court has never gone. There is simply no basis for the Tucker Act to be the first-ever federal statute that denies parties any forum to challenge the constitutionality of government action. "The [*Webster*] rule is an interpretive tool of constitutional avoidance," *Collins v. Dep't of the Treasury*, 83 F.4th 970, 980–81 (5th Cir. 2023), which in this case compels holding that the district court had jurisdiction over Appellants' constitutional claim. *See In re al-Nashiri*, 791 F.3d 71, 76–77 (D.C. Cir. 2015); *Marozsan v. United States*, 852 F.2d 1469, 1473 (7th Cir. 1988) (en banc); *id.* at 1483 (Posner, J., concurring); *see also INS v. St. Cyr*, 533 U.S. 289, 298-300, 314, 326 (2001) (employing constitutional avoidance canon to read statute as not stripping jurisdiction over habeas claim).

The district court's jurisdictional analysis for Appellants' constitutional claims should have begun and ended with *Webster*. But the court nowhere acknowledged *Webster* or its clear-statement rule. That rule controls here.

## II. The Court Should Not Follow the Erroneous Emergency Stay Decision in *Sustainability Institute*

This Court should not follow the recent non-precedential stay panel decision in *Sustainability Institute v. Trump*, No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025),[2] as the government will likely urge it to do. The stay order did not address *Webster* at all, nor did it acknowledge that parties cannot bring separation of powers claims in the Court of Federal Claims. The order focused primarily on the plaintiffs' APA claims. It devoted just a single sentence to the constitutional claims at issue there, and provided no substantive analysis on why "it appear[ed] unlikely" that the district court had jurisdiction over those claims. 2025 WL 1587100, at *2. The order instead cited three other cases to support its assertion, but as explained below, those cases are either inapposite or have been reversed.

First, the panel relied on *Armstrong*, 575 U.S. at 327-28, for the conclusion that the Tucker Act imposes an "implied statutory limitation[]" on bringing ultra vires and constitutional claims in district court. But *Armstrong* has no relevance here. For one, the relevant portions of *Armstrong* involved an alleged *statutory* violation (specifically, a provision of the Medicaid Act)—not the Constitution. *See id.* at 322. For another, the Court in *Armstrong* emphasized that the Medicaid Act

---

[2] The Fourth Circuit has "been clear" that "an unpublished, non-precedential decision … [does] not constitute binding authority under [Fourth] circuit rules," nor should it be read to "demarcate a change" in existing law. *Ham v. Breckon*, 994 F.3d 682, 692-93 (4th Cir. 2021) (alterations and quotations omitted).

provided a different "method of enforcing the substantive rule[s]" in the statute that the plaintiffs sought to enforce in district court. *Id.* at 328. Here, however, because the Court of Federal Claims lacks jurisdiction over constitutional claims, there is no other "method" for a plaintiff to enforce the relevant constitutional "substantive rule[s]." In all events, *Armstrong* ultimately turned on the fact that, unlike here, the relevant statute (again, not a constitutional provision) was "judicially unadministrable," because its standards were vague and subjective. *See id.* at 328.

The stay panel also cited *Board of Governors of Fed. Reserve System v. MCorp Financial*, Inc., 502 U.S. 32 (1991), but that case is equally off point. As in *Armstrong*, the alleged violations in *Board of Governors* were statutory violations, not constitutional ones. 502 U.S. at 43. And the statute in *Board of Governors* provided an alternative forum (the FISA court) for the plaintiff to bring the very same statutory claim it sought to raise instead in district court. *See id.* Finally, *Board of Governor*s emphasized that the relevant statute "clearly and directly" stripped district courts of jurisdiction over the claims asserted there. *Id.* at 44. Indeed, *Board of Governors* reiterated "the familiar proposition that only upon a showing of clear and convincing evidence of a contrary legislative intent should the courts restrict access to judicial review." *Id.* at 466 (quotations omitted). Again,

the Tucker Act does not clearly and convincingly evidence congressional intent to strip plaintiffs from raising constitutional claims in any forum.

Lastly, *Sustainability Institute* cited a stay panel decision in *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *5 (D.C. Cir. May 3, 2025), but the en banc D.C. Circuit reversed the Tucker Act portion of that stay order. *See* 2025 WL 1521355, at *1 (D.C. Cir. May 28, 2025). The en banc court reversed "substantially for the reasons explained by Judge Pillard" in her initial dissent from the stay order. *Id.* There, Judge Pillard explained that the district court had jurisdiction over the constitutional claims because "the Court of Claims could not adjudicate plaintiffs' constitutional claims," and because "[c]onstitutional claims for injunctive or declaratory relief face no sovereign immunity bar." 2025 WL 1288817, at *12 (Pillard, J., dissenting). The government did not seek Supreme Court review of the en banc order adopting Judge Pillard's reasoning.[3]

---

[3] The government may point to the Supreme Court's recent discussion of "non-statutory" claims in *Nuclear Regulatory Commission v. Texas*, 145 S. Ct. 1762 (2025). But the Court's discussion concerned non-statutory review of alleged *statutory* violations. *Id.* at 1776. The Court's analysis has no bearing on freestanding constitutional claims. *See Free Enter. Fund*, 561 U.S. at 491 n.2.

### III.  *Dalton* **Does not Displace** *Webster* **or Apply Here**

In its more recent briefing in *Sustainability Institute*, the government has effectively conceded that the Tucker Act does not preclude jurisdiction over freestanding constitutional claims. The government now does not rely on the Tucker Act with respect to those claims, and instead argues only that the separation of powers claims are not "bona fide constitutional claims." *Sustainability Institute*, Gov't C.A. Br., Doc. 54 at 14-15, No. 25-1575 (4th Cir. June 23, 2025); *see id.*, Resp. C.A. Br., Doc. 52 at 37-38 (same). The government erroneously relies on *Dalton v. Specter*, 511 U.S. 462, for that proposition.

As an initial matter, the government's abandonment of its Tucker Act argument as to constitutional claims is a confession of error by the district court here (and the stay panel in *Sustainability Institute*). The district court's rejection of the separation of powers claims in this case rested solely on the Tucker Act, which the government now longer sets forth as the basis for denying an injunction on the constitutional claims.

And the government is wrong that Appellants' claims are not "bona fide" constitutional claims. The Supreme Court has decidedly rejected any suggestion that separation of powers claims hold second-class constitutional status. *Free Enter. Fund*, 561 U.S. at 491 n.2. There is "no reason and . . . no authority" that "separation-of-powers claim should be treated differently than every other

constitutional claim." *Id.* Far from it, separation of power claims may be brought by any aggrieved party, because "the separation of powers is designed to preserve the liberty of all the people." *Collins*, 594 U.S. at 245.

Nor is there any basis for treating separations of powers claims differently when they are premised on agency refusals to comply with statutory mandates. The government has misread *Dalton* in arguing otherwise. In *Dalton*, the President was said to have violated the "procedural requirements" of a statute governing closure of military bases by "accepting procedurally flawed" recommendations issued by a federal commission for the closure of the Philadelphia Naval Shipyard. 511 U.S. at 474, 476. While the Court assumed "that some claims that the President violated a statutory mandate are judicially reviewable outside the framework of the APA," it reaffirmed that "such review is not available when the statute in question commits the decision to the discretion of the President." *Id.* at 474. There, the governing statute did "not at all limit the President's discretion in approving or disapproving the Commission's recommendations." *Id.* at 476.

In reaching this holding, *Dalton* explained that not every procedural statutory violation gives rise to a constitutional violation, where the ultimate decision is left to the President's discretion. The Court's cases did "not support the proposition that *every* action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." *Id.* at 472 (emphasis

added). Because the statute committed the challenged decision "to the discretion of the President," *id.* at 474, that discretionary decision was not subject to judicial review, and the plaintiffs could not avoid that limitation by framing the alleged procedural violations as constitutional ones.

The D.C. Circuit and other courts have since held that *Dalton*'s holding is limited to claims challenging discretionary statutory decisions. The D.C. Circuit has held: "*Dalton*'s holding merely stands for the proposition that when a statute entrusts a discrete specific decision to the President *and contains no limitations on the President's exercise of that authority*, judicial review of an abuse of discretion claim is not available." *See Reich*, 74 F.3d at 1331 (emphasis added). In *Reich*, the government argued, using language markedly similar to the government's arguments in *Sustainability Institute*, that *Dalton* foreclosed constitutional claims because they were "statutory claims in constitutional dress." Br. for Appellee at 23, *Reich*, 1995 WL 17204619 (Oct. 26, 1995). Rejecting the government's argument, the D.C. Circuit explained that "*Dalton* is inapposite where the claim instead is that the presidential action—not one, it should be added, even contemplated by Congress—independently violates" the statute at issue. *Reich*, 74 F.3d at 1332.

Consistent with this understanding of *Dalton*, the D.C. Circuit has also held that an agency's refusal to comply with a statute *does give rise* to a separation of powers violation where the agency violates clear "statutory *mandates*." *In re Aiken*

*Cnty.*, 725 F.3d at 259. In *Aiken County*, then-Judge Kavanaugh issued a writ of mandamus based on an agency's constitutional violation in refusing to "comply with the law as it has been set by Congress." *Id.* at 257. The Nuclear Regulatory Commission had "declined to continue the statutorily mandated Yucca Mountain licensing process." *Id.* at 260. The court held that, "[u]nder Article II of the Constitution and relevant Supreme Court precedents, the President must follow statutory *mandates*." *Id.* at 259. Thus, although the agency action reflected a statutory violation, the court's holding was that the agency violated the separation of powers. Because "our constitutional system of separation of powers would be significantly altered if [the Court] were to allow executive … agencies to disregard federal law," the court's "decision … rest[ed] on the constitutional authority of Congress, and the respect that the Executive and the Judiciary properly owe to Congress." *Id.* at 267.

The instant case, like *Aiken County* and unlike *Dalton*, involves "statutory mandates." Congress, in exercising its exclusive constitutional power of the purse, appropriated $25 million to DHS for CIGP in Fiscal Year 2023, and another $25 million for the program in Fiscal Year 2024. These appropriations reflect mandatory directives to DHS to obligate and spend the "full amount appropriated by Congress for [the] particular . . . program." *In re Aiken Cnty.*, 725 F.3d at 261 n.1. The only permissible way for DHS to spend less than that amount is for "the

President [to] propose the rescission of funds, and Congress then may decide whether to approve a rescission bill." *Id.* at 261 n.1 As the Government Accountability Office has explained, "the Impoundment Control operates on the *premise* that when Congress appropriates money to the executive branch, the President is required to obligate the funds." B-329092 (Dec. 12, 2017) (emphasis added); *accord* B-332654 (Nov. 12, 2020); B–203057, Sept. 15, 1981.

DHS's mass termination of the CIGP grants here violates the separation of powers, by permanently impounding the appropriations that Congress required to be spent. The FY2023 funds have already expired, meaning the government cannot re-obligate the funds from the terminated grants if the terminations are effectuated. The funds will disappear forever if the terminations are not reversed, contrary to Congress' clear command. The FY2024 funds expire on September 30, 2025, and given DHS's elimination of CIGP in its entirety, there can be no doubt that these funds will be unconstitutionally impounded if the terminations go through.

The separation of powers violations are more than "bona fide" in these circumstances. "[T]he constitutional authority of Congress, and the respect that the Executive and the Judiciary properly owe to Congress," *In re Aiken Cnty.*, 725 F.3d at 267, require this Court to reverse the decision below.

## CONCLUSION

For the reasons stated above, the Court should reverse.

Respectfully submitted,

*/s/ Daniel F. Jacobson*
Daniel F. Jacobson
Kyla M. Snow*
Jacobson Lawyers Group PLLC
*1629 K Street NW, Suite 300*
*Washington DC, 20006*
*(301) 823-1148*
*dan@jacobsonlawyersgroup.com*

\* Not admitted in the District of Columbia. Practice limited to matters before U.S. courts.

*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing *amicus* brief complies with the word limit of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7) because the brief contains 4,211 words. The brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and (6) because it has been prepared using Microsoft Word in proportionally spaced 14-point Times New Roman font.

*/s/Daniel F. Jacobson*
Daniel F. Jacobson

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2025, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/Daniel F. Jacobson*
Daniel F. Jacobson