# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

Solutions in Hometown Connections, *et al.*,

Plaintiffs-Appellants,

v.

Kristi Noem, *et al.*,

Defendants-Appellees.

On Appeal from the United States District Court
for the District of Maryland

## BRIEF FOR APPELLEES

Kelly O. Hayes
  *United States Attorney*

Jessica F.W. Dillon
Rebecca A. Koch
  *Assistant United States Attorneys*
  *U.S. Attorney's Office, District of*
  *Maryland*
  *36 S. Charles Street, 4th Floor*
  *Baltimore, Maryland 21201*
  *(401) 209-4892*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ............................................................................................... 1

STATEMENT OF JURISDICTION ................................................................... 4

STATEMENT OF THE ISSUES ......................................................................... 4

STATEMENT OF THE CASE ............................................................................ 5

      A.     Statutory and Factual Background ................................................... 5

      B.     Prior Proceedings ........................................................................... 11

SUMMARY OF ARGUMENT ......................................................................... 15

STANDARD OF REVIEW .............................................................................. 18

ARGUMENT ................................................................................................... 18

I.     The District Court Correctly Held That Plaintiffs Are Not Likely to
     Succeed on the Merits of Their Claims and, Therefore, Are Not
     Entitled to a Preliminary Injunction ............................................................ 18

      A.     Plaintiffs' Claims Related to the FY2023 Grants Are Contract
            Claims Over Which the United States Court of Federal Claims
            Has Exclusive Jurisdiction ............................................................. 18

      B.     The Grant Agreements Awarded to Plaintiffs Are Contracts
            That Are Subject to the Tucker Act ................................................ 30

      C.     The District Court Does Not Have "Freestanding" Jurisdiction
            Over Plaintiffs' Separation of Powers and Ultra Vires Claims,
            Which, in Any Case, Are Not Likely to Succeed on the Merits ........ 31

      D.     The Alleged "Dismantling" of the CIGP Is Not a Discrete
            Agency Action Subject to Judicial Review Under the APA ............. 39

E.    Funding Decisions Are Committed to Agency Discretion and Are Not Subject to Arbitrary-and-Capricious Review ........................43

II.    This Court Cannot, and Should Not, Award the Preliminary Injunctive Relief Plaintiffs Seek .................................................................................... 45

CONCLUSION ...................................................................................................... 46

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                           **Page(s)**

*AIDS Vaccine Advoc. Coal. v. Dep't of State*,
770 F. Supp. 3d 121 (D.D.C. Mar. 10, 2025) ............................................. 41-42

*Albrecht v. Committee on Emp. Benefits of the Fed.*
*Reserve Emp. Benefits Sys.*,
357 F.3d 62 (D.C. Cir. 2004) .............................................................. 19-20, 29

*Am. Ass'n of Colleges for Teacher Educ. v. McMahon*,
App. No. 25-1281, 2025 WL 1232337
(4th Cir. Apr. 10, 2025) ............................................................................. 21-22

*Am. Sci. & Eng'g, Inc. v. Califano*,
571 F.2d 58 (1st Cir. 1977) ................................................................................ 25

*Armstrong v. Exceptional Child Center, Inc.*,
575 U.S. 320 (2015) ............................................................................................ 32

*Ass'n for Educ. Fin. & Pol'y, Inc. v. McMahon*,
Case No. 25-cv-00999-TNM, 2025 WL 1568301
(D.D.C. June 3, 2025) ................................................................................... 34, 42

*Bennett v. New Jersey*,
470 U.S. 632 (1985) ............................................................................................ 30

*Boaz Housing Auth. v. United States*,
994 F.3d 1359 (Fed. Cir. 2021) ......................................................................... 38

*Bowen v. Massachusetts*,
487 U.S. 879 (1988) ..................................................................................... 27, 28

*Burke v. Southern Pacific Railroad*,
234 U.S. 669 (1914) ............................................................................................ 31

*City of New York v. U.S. Dep't of Defense*,
913 F.3d 423 (4th Cir. 2019) ....................................................................... 40, 41

*Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*,
56 F.3d 556 (4th Cir. 1995) ............................................................................... 45

*Columbus Reg'l Hosp v. United States*,
990 F.3d 1330 (Fed. Cir. 2021) ......................................................................... 31

iii

*Consumer Fin. Prot. Bureau v. Cmty. Fin. Servs. Ass'n of Am.*,
    601 U.S. 416 (2024) ...................................................................... 35

*Dalton v. Specter*,
    511 U.S. 462 (1994) ...................................................................... 34

*Dep't of Educ. v. California*,
    145 S. Ct. 966 (2025) ....................................... 2, 3, 15, 20-21, 22, 23, 24, 27, 30

*Eden, LLC v. Justice*,
    36 F.4th 166 (4th Cir. 2022) ...................................................... 42-43

*Frazier v. Prince George's County*,
    86 F.4th 537 (4th Cir. 2023) ............................................................ 18

*Ginsberg v. United States*,
    707 F.2d 91 (4th Cir. 1983) ..............................................................28

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ........................................................................17

*Ingersoll-Rand Co. v. United States*,
    780 F.2d 74 (D.C. Cir. 1985) .............................................. 20, 27, 29

*In re Naranjo*,
    768 F.3d 332 (4th Cir. 2014) ............................................................ 45

*In re Under Seal*,
    749 F.3d 276 (4th Cir. 2014) ............................................................ 30

*James v. Caldera*,
    159 F.3d 573 (Fed. Cir. 1998) ........................................................ 20

*Lincoln v. Vigil*,
    508 U.S. 182 (1993) .......................................................... 17, 43, 44

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) ........................................................................ 42

*Maine Cmty. Health Options v. United States*,
    590 U.S. 296 (2020) ........................................................................ 18

*Match-E-Be-Nash-She-Wish Band of Pottawatomi
Indians v. Patchak*,
    567 U.S. 209 (2012) ........................................................................ 19

*Megapulse, Inc. v. Lewis*,
672 F.2d 959 (D.C. Cir. 1982) ........................................ 20, 23, 25, 26

*Milk Train, Inc. v. Veneman*,
310 F.3d 747 (D.C. Cir. 2002) ............................................. 44

*Norton v. Southern Utah Wilderness Alliance*,
542 U.S. 55 (2004) ......................................................... 40

*Nuclear Regul. Comm'n v. Texas*,
145 S. Ct. 1762 (June 18, 2025) ..................................... 32, 33

*Pierce v. N. Carolina State Bd. of Elections*,
97 F.4th 194 (4th Cir. 2024) ............................................. 45

*Policy & Research, LLC v. U.S. Dep't of Health & Human Servs.*,
313 F. Supp. 3d 62 (D.D.C. 2018) ..................................... 44

*Portsmouth Redevelopment & Housing Auth. v. Pierce*,
706 F.2d 471 (4th Cir. 1983) ............................... 25, 26-27, 28

*Sines v. Hill*,
106 F.4th 341 (4th Cir. 2024) ............................................. 30

*Sloas v. CSX Transp. Inc.*,
616 F.3d 380 (4th Cir. 2010) ............................................. 43

*Spectrum Leasing Corp. v. United States*,
764 F.2d 891 (D.C. Cir. 1985) ....................................... 24-25

*Sustainability Institute v. Trump*,
App. No. 25-1575, 2025 WL 1587100
(4th Cir. June 5, 2025) .................... 2, 3, 15, 21, 22, 23, 24, 27, 30, 32

*Sustainability Institute v. Trump*,
Case No. 25-cv-2152-RMG,
2025 WL 1486978 (D.S.C. Apr. 29, 2025)....................... 22

*U.S. Conference of Catholic Bishops v. U.S. Dep't of State*,
Case No. 25-cv-00465-TNM, 2025 WL 763738
(D.D.C. Mar. 11, 2025) ..................................................... 28

*United States v. Cnty Sch. Bd. of Prince George's Cnty., Va.*,
221 F. Supp. 93 (E.D. Va. 1963) ....................................... 31

v

*United States v. J & E Salvage Co.*,
   55 F.3d 985 (4th Cir. 1995) .......................................................... 20, 25

*United States v. Northern Pacific Ry. Co.*,
   256 U.S. 51 (1921) ........................................................................... 31

*Webster v. Doe*,
   486 U.S. 592 (1988) ..................................................................... 34-35


**Statutes:**

Administrative Procedure Act (APA):
   5 U.S.C. § 551(13) ........................................................................... 39
   5 U.S.C. § 701(a)(2) ......................................................................... 42
   5 U.S.C. § 702 ................................................................................... 19
   5 U.S.C. § 704 ................................................................................... 28

Homeland Security Act:
   6 U.S.C. § 111(b)(1)(E) ............................................................ 36, 37
   6 U.S.C. § 271(a) ......................................................................... 5, 37
   6 U.S.C. § 271(f) ................................................................... 5, 36, 37

28 U.S.C. § 1292(a)(1) .................................................................... 4, 29

Tucker Act:
   28 U.S.C. § 1491(a)(1) ............................................................... 19, 29

41 U.S.C. § 7102 ................................................................................. 29

Appropriations Acts:
   Consolidated Appropriations Act of 2023,
      Pub. L. No. 117-328, 136 Stat. 4745 .................................. 6, 26, 36
   Further Consolidated Appropriations Act of 2024,
      Pub. L. No. 118-47, 138 Stat. 612 ........................................... 6, 36


**Regulations:**

2 C.F.R. § 200.340(a) ..................................................... 1, 8, 9, 33, 39

2 C.F.R. § 200.341 ............................................................................... 9

2 C.F.R. § 200.342 ................................................................ 9

2 C.F.R. § 200.344 ................................................................ 8

**Other Authorities:**

*Grant Program Impact*, USCIS,
   https://perma.cc/9F4L-SVLG ............................................. 5

*Citizen Resource Center*, USCIS
   *https://www.uscis.gov/citizenship* ....................................38

# INTRODUCTION[1]

Plaintiffs-Appellants ("Plaintiffs") are non-profit organizations who help lawful permanent residents learn English, study for the citizenship test, and apply to be naturalized United States citizens.  To support their provision of these services, Plaintiffs were awarded grants through the Citizenship and Integration Grant Program (the "CIGP"), a federal grant program administered by United States Citizenship and Immigration Services ("USCIS").  On March 27, 2025, Plaintiffs' CIGP grants were terminated pursuant to the terms and conditions of the grants and 2 C.F.R. § 200.340(a)(2), which permits an agency to terminate an award if it "no longer effectuates the program goals or agency priorities."[2]

Through this lawsuit, Plaintiffs broadly challenge what they characterize as the "dismantling" of the CIGP, asserting claims under the Administrative Procedure Act (the "APA"), as well as nonstatutory separation of powers and ultra vires claims.  Plaintiffs moved for a preliminary injunction, asking the District Court to order, in effect, that their grants be reinstated and that their funding be restored.  JA581.  The

---

[1] Capitalized terms used but not defined in this Introduction shall have the meanings set forth in the Statement of the Case section of this brief.  Citations herein to "Op. Br." are to the Corrected Brief for Appellants, Doc. 23, filed on June 25, 2025.

[2] *See* JA609.  As noted *infra* at footnote 7, the Uniform Guidance was later amended, effective October 1, 2024, and this subsection became (a)(4).  Thus, the FY2024 grants for Plaintiffs ILCM and MIRA were terminated pursuant to 2 C.F.R. § 200.340(a)(4).

District Court denied that request, finding that Plaintiffs were unlikely to succeed on the merits of their claims because (1) the claims were in essence contract claims, which must be brought in the United States Court of Federal Claims under the Tucker Act, JA743-747; (2) Plaintiffs' separation of powers and ultra vires claims were unsupported by the Appropriations Acts or any other statute identified by Plaintiffs, JA745-746; and (3) the alleged "dismantling" of the CIGP does not constitute a discrete agency action subject to APA review, JA747-748. Plaintiffs appeal this ruling.

Regarding the Tucker Act, over the past several months, there has been a flood of lawsuits—including this one—challenging agency decisions to terminate federal grants across a range of industries. These grant termination cases nearly all raise the issue of Tucker Act jurisdiction. Both the Supreme Court, in *Dep't of Educ. v. California*, 145 S. Ct. 966 (2025), and a panel of this Court, in *Sustainability Institute v. Trump*, 2025 WL 1587100 (4th Cir. June 5, 2025), recently weighed in on this issue.[3] Both Courts held that the Tucker Act likely applies, such that the plaintiffs' grant termination claims must be brought in the Court of Federal Claims, not federal district court. The District Court in this case found the same and denied Plaintiffs'

---

[3] Both cases were in the procedural context of granting motions by the government to stay a district court's preliminary injunction pending appeal. The government's motions to stay required the Courts to find that the government was likely to succeed on the merits.

motion for a preliminary injunction in part on that basis. In this appeal, Plaintiffs ask this Court to hold – in the face of the *California* and *Sustainability Institute* decisions – that the District Court's very similar conclusion was, nonetheless, an abuse of discretion. Going further still, Plaintiffs seek to have this Court make factual findings in the first instance regarding irreparable harm and the balance of equities and actually enter the preliminary injunction that the District Court declined to issue. This Court should reject that invitation and affirm.

The District Court's other holdings are likewise correct and should be affirmed. Plaintiffs cannot circumvent the Court of Federal Claims' exclusive jurisdiction under the Tucker Act by bringing identical claims framed under nonstatutory separation of powers and ultra vires theories. Even if Plaintiffs theoretically could do so, these nonstatutory claims fail on the merits because the grant terminations simply did not violate congressional appropriations or any other statute. In addition, Plaintiffs' broad programmatic attack—aimed at the alleged "dismantling" of CIGP writ large—does not challenge a discrete agency action within the APA's purview. Lastly, while not decided by the District Court, Plaintiffs are unlikely to succeed on the merits of their claims because a federal agency's funding decisions are committed to agency discretion by law and not subject to arbitrary-and-capricious review under the APA, and the grant terminations were not contrary to law.

For these reasons and those discussed below, this Court should affirm the District Court's order denying Plaintiffs' motion for preliminary injunction.

## STATEMENT OF JURISDICTION

Plaintiffs brought this action alleging that certain federal grants were improperly terminated. The District Court concluded that it likely lacked jurisdiction over Plaintiffs' claims, and, accordingly, denied their motion for a preliminary injunction on May 20, 2025 based on a failure to show a likelihood of success on the merits. JA726 (Order), JA727-748 (Memorandum Opinion). Plaintiffs filed a notice of appeal on June 2, 2025. JA749. This Court has jurisdiction over the appeal under 28 U.S.C. § 1292(a)(1).

## STATEMENT OF THE ISSUES

1. Whether the District Court had jurisdiction over claims that Plaintiffs are entitled to monetary payments under a grant program, or whether those claims arise from contracts and thus are subject to the exclusive jurisdiction of the Court of Federal Claims under the Tucker Act.

2. Whether the District Court had jurisdiction over Plaintiffs' nonstatutory separation of powers and ultra vires claims, which are based upon the same facts as their APA claims, and, if so, whether Plaintiffs demonstrated a likelihood of success on those claims.

3. Whether Plaintiffs' challenge to the alleged "dismantling" of the CIGP writ large challenges a discrete agency action subject to judicial review under the APA.

## STATEMENT OF THE CASE

### A.    Statutory and Factual Background

1.    USCIS is a component agency of the United States Department of Homeland Security ("DHS") and administers the country's naturalization and immigration system.  *See* 6 U.S.C. § 271(a).  USCIS includes an Office of Citizenship, which is "responsible for promoting instruction and training on citizenship responsibilities for aliens interested in becoming naturalized citizens of the United States, including the development of educational materials."  6 U.S.C. § 271(f)(2).  USCIS's Office of Citizenship has administered the CIGP since the program's inception in 2009.  According to its website,

> The goal of the CIGP is to expand the availability of high-quality citizenship preparation services for LPRs [lawful permanent residents] across the nation and to provide opportunities for immigrants to gain the knowledge and skills necessary to assimilate into the fabric of American society.  USCIS grant recipients provide English language and civics instruction, legal assistance with naturalization applications, and create community space for immigrant assimilation.

*Grant Program Impact*, USCIS, https://perma.cc/9F4L-SVLG.

The scope and requirements for the CIGP are not prescribed in any federal statute or regulation.  Rather, the CIGP is authorized and funded through an annual appropriation by Congress, and its implementation and administration has been left

to USCIS.  The Consolidated Appropriations Act of 2023, Pub. L. No. 117-328 (the "2023 Appropriations Act"), provides:

> For necessary expenses of U.S. Citizenship and Immigration Services for Federal assistance for the Citizenship and Integration Grant Program, $25,000,000, to remain available until September 30, 2024.

2023 Appropriations Act, 136 Stat. 4745.  Similarly, the Further Consolidated Appropriations Act of 2024, Pub. L. No. 118-47 (the "2024 Appropriations Act," and together with the 2023 Appropriations Act, the "Appropriations Acts"), provides:

> For necessary expenses of U.S. Citizenship and Immigration Services for Federal assistance for the Citizenship and Integration Grant Program, $10,000,000, to remain available until September 30, 2025.

2024 Appropriations Act, 138 Stat. 612.  To be clear, beyond the above-quoted portions of the Appropriations Acts, no other federal statute or regulation mentions the CIGP.

2.  In Fiscal Year 2023 ("FY2023"), USCIS awarded $22 million in CIGP grants to 65 organizations, including eight of the 10 Plaintiffs.  JA32 (Am. Compl. ¶52).  The FY2023 grants have a performance period of October 1, 2023 to September 30, 2025.  JA32 (Am. Compl. ¶52).  In Fiscal Year 2024 ("FY2024"), USCIS awarded $10 million in CIGP grants to 36 organizations, including Plaintiffs Immigrant Law Center of Minnesota ("ILCM") and Massachusetts Immigrant and Refugee Advocacy Coalition ("MIRA").  JA32 (Am. Compl. ¶53).  The FY2024

grants have a performance period of October 1, 2024 to September 30, 2026.  JA32 (Am. Compl. ¶53).

Plaintiffs each received an award letter from DHS memorializing the terms and conditions of the grants.  *See* JA261-500, JA583-605.  Each of the grants incorporates by reference the Office of Management and Budget Guidance on Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards, 2 C.F.R. § 200 *et seq.* (the "Uniform Guidance").[4]  *See* JA279, JA304, JA331, JA358, JA385, JA412, JA439, JA465, JA490, JA597.  Plaintiffs access the grant funds by submitting requests for reimbursement of allowable costs incurred.  *See* JA502 (¶7); JA512 (¶6); JA519 (¶6); JA525 (¶7); JA532-533 (¶9); JA540 (¶8); JA546 (¶5); JA558 (¶5); JA567 (¶5); JA574-575 (¶6).

Both the grants themselves and the Uniform Guidance incorporated by reference therein contemplate that the agency may terminate the grants and expressly provide for the same.  The FY2023 grants each include the following "Termination" provision:

> Either the Recipient or the DHS may terminate this Award by giving written notice to the other party at least thirty (30) calendar days prior to the effective date of the termination.  All notices are to be transmitted

---

[4] The termination provision of the Uniform Guidance applicable to the FY2023 Plaintiffs' grants is the November 12, 2020 version, which is included in the Joint Appendix at JA609.  The entirety of the Uniform Guidance applicable to the FY2023 Plaintiffs is available at https://www.govinfo.gov/content/pkg/CFR-2023-title2-vol1/pdf/CFR-2023-title2-vol1-subtitleA-chapII.pdf.  The Uniform Guidance was later amended, effective October 1, 2024.

to the DHS Grants Officer via the email address identified on the Notice of Award. The Recipient's authority to incur new costs will be terminated upon arrival of the date of receipt of the letter or the date set forth in the notice. Any costs incurred up to the earlier of the date of the receipt of the notice or the date of termination set forth in the notice will be negotiated for final payment. Closeout of this Award will be commenced and processed pursuant to 2 C.F.R. § 200.344.

JA278, JA303, JA330, JA357, JA384, JA411, JA438, JA489. The FY2024 grants provide:

2. <u>Termination by DHS</u>. The regulation at 2 C.F.R. § 200.340(a) provides that DHS may unilaterally terminate the federal award in whole or part if the Recipient fails to comply with the terms and conditions of the federal award and when, to the greatest extent authorized by law, the federal award no longer effectuates the program goals or agency priorities. When terminating a federal award, the DHS will promptly notify the Recipient in writing via email of the termination that will set forth the reasons for the termination and the effective date of the termination. A Recipient may object and provide written information and documentation challenging the termination electronically via email to DHS within 30 days of receiving the termination notice. The termination notice may provide additional procedures for submitting an objection to the termination.

JA464, JA596. In addition, the FY2024 grants provide:

The Recipient and any subrecipients have no property interest in the funds made available by DHS in the Recipient's PMS account. At any time during or after the period of performance of the Federal Award, DHS may adjust the amounts available in Recipient's PMS account due to amendments to the Federal Award, partial or full terminations, or other reasons.

JA461, JA593. The Uniform Guidance allows an agency to terminate an award if it no longer effectuates the program goals or agency priorities. 2 C.F.R.

§ 200.340(a)(2) (JA609).  The agency must provide notice of the termination and an opportunity to object.  *Id*. §§ 200.341(a), 200.342 (JA610).

3.  On January 28, 2025, DHS Secretary Kristi Noem issued a Memorandum instructing that DHS grant disbursements to non-profits related to immigration "are on hold pending review."  JA229 (the "Noem Memorandum").  Plaintiffs continued to have access to the grant funds.  *E.g.*, Case No. 25-cv-00885-LKG, ECF No. 30-3 at 17-18 (Declaration of Angelica Salas, ¶7, stating that "CHIRLA's Managing Director withdrew funds on the morning [sic] February 4, 2025").  On February 4, 2025, Plaintiffs received a letter stating that "[p]ursuant to the [Noem Memorandum], and effective immediately, your grant from [USCIS] is frozen.  In accordance with the pause in activities, payments are not available at this time."  JA230 (the "Freeze Letters").  Plaintiffs were thereafter unable to access the grant funds; however, as explained below, Plaintiffs are now able to request reimbursement for allowable expenses incurred through March 27, 2025, as well as termination costs, if any.

On March 27, 2025, DHS informed Plaintiffs by letter (the "Termination Letters") that their grants were terminated, effective 30 days after the date of the letter.  *See* JA234-260, JA606-608 (Termination Letters).  The Termination Letters advised, "DHS has determined that the scope of work performed under this award no longer effectuates the program goals and the Department's priorities," instructed

9

the recipients to stop work under the awards, and advised that costs incurred after the date thereof would be unallowable. *See, e.g.*, JA234-236 (Termination Letter to Plaintiff Solutions in Hometown Connections Corp.). The Termination Letters identified the remaining unobligated federal funding on the award and stated that DHS intended to reduce the amount of approved federal funding for the award by such amount. *E.g.*, JA234.

The Termination Letters advised that costs incurred before the date thereof would be allowable if not incurred in anticipation of termination and if they would have otherwise been allowable had the award not been terminated. *E.g.*, JA234. All Plaintiffs have submitted requests to DHS for reimbursement of such expenses. *See* JA504 (¶17), JA513 (¶9), JA520 (¶9), JA526 (¶10), JA533 (¶12), JA541 (¶14), JA548 (¶10), JA559 (¶11), JA569 (¶¶11, 12), JA576 (¶13). The Termination Letters further advised of the process for the recipients to request termination costs and to object to the termination and closeout of their grants. *E.g.*, JA234-236. Several Plaintiffs have sought termination costs and/or objected to termination. *See* JA504-505 (¶¶18-20), JA513 (¶¶9, 10), JA520 (¶10), JA526 (¶¶11-12), JA533-534 (¶¶13, 14), JA542 (¶¶15, 16), JA548 (¶¶11, 12), JA560 (¶12), JA569-570 (¶¶12, 13), JA576-577 (¶¶13, 14).

According to the FY2023 Plaintiffs' declarations, an aggregate of $1,299,319 remains unpaid on Plaintiffs' FY2023 grants. If their requests for reimbursement of

costs incurred through March 27, 2025 and termination costs are approved, this amount will decrease to (at most) $812,385.98. *See* JA504 (¶17); JA513 (¶9); JA520 (¶9); JA526 (¶10); JA533 (¶12); JA541-542 (¶14); JA548 (¶11); JA569 (¶12).[5] According to ILCM's and MIRA's declarations (who each have FY2024 grants), $546,811 remains unpaid on their FY2024 grants. If their requests for reimbursement of costs incurred through March 27, 2025 and termination costs are approved, this amount will decrease to $461,503. *See* JA559 (¶11); JA576-577 (¶13).

### B.    Prior Proceedings

1. On March 17, 2025, Plaintiffs filed the original complaint, thereby commencing this lawsuit in the United States District Court for the District of Maryland (the "District Court"). Case No. 25-cv-00885-LKG, ECF No. 1. On March 25, 2025, Plaintiffs filed a Motion for Temporary Restraining Order, Preliminary Injunction & APA § 705 Stay. *Id.*, ECF No. 30 (the "First PI Motion"). The District Court denied Plaintiffs' First PI Motion with respect to the Plaintiffs with FY2023 CIGP grants, holding that the FY2023 Plaintiffs were unlikely to succeed on the merits of their claims because the Court likely lacked subject matter

---

[5] If the requests are approved, two of the FY2023 Plaintiffs will have recouped the entirety of their grant funds. *See* JA548 (¶ 11); JA569 (¶ 12).

jurisdiction over Plaintiffs' claims under the Tucker Act.  *Id.*, ECF Nos. 44 (Order regarding First PI Motion), 46 (Memorandum Opinion regarding First PI Motion).[6]

On April 25, 2025, Plaintiffs filed an amended complaint, JA18-58 (the "Amended Complaint" or "Am. Compl."), and a renewed Motion for Preliminary Injunction & APA § 705 Stay, *see* Case No. 25-cv-00885-LKG, ECF No. 53 (the "Second PI Motion").  In the Amended Complaint, Plaintiffs attempted to resolve their jurisdictional issues by reframing their claims as challenging the alleged "dismantling" of the CIGP writ large, as opposed to the terminations of their individual grants.  *E.g.*, JA19 (Am. Compl. ¶3), JA47-49 (Am. Compl. ¶¶129-135), JA50-52 (Am. Compl. ¶¶138-144).  The Amended Complaint asserts six causes of action, challenging the "dismantling" of the CIGP as violating the APA – specifically, that it was arbitrary and capricious (Count I) and contrary to law (Count II) – and as against the Constitution – specifically, that it violated separation of powers (Count III), Fifth Amendment due process (Count IV), was ultra vires (Count V), and violated the First Amendment (Count VI).  JA47-55.[7]

---

[6] The District Court held in abeyance a decision with respect to Plaintiff ILCM, which has a FY2024 grant.  *See* Case No. 25-cv-00885-LKG, ECF No. 44.

[7] (Count IV for Fifth Amendment due process and Count VI for First Amendment retaliation did not underlie Plaintiffs' Second PI Motion, and therefore have not been considered by the District Court.)

In their Prayer for Relief in the Amended Complaint, Plaintiffs effectively ask the District Court to order the government to reinstate their terminated grants and to continue disbursing funds thereunder. JA56. Plaintiffs phrase this relief in injunctive terms, asking the District Court to "[v]acate and set aside the CIGP dismantling, including . . . the March 27 mass termination email and letters," to "[p]reliminarily and permanently enjoin Defendants from dismantling the CIGP, including enjoining them from implementing or giving effect to . . . the termination email and letters," and to "[p]ostpone the effective date of the CIGP dismantling and any actions by Defendants to implement it or to otherwise freeze or terminate the disbursement of appropriated and obligated CIGP funds . . . ." JA56. In addition, Plaintiffs seek continuing judicial oversight over the CIGP, asking the District Court to "[o]rder Defendants to file a status report within 48 hours of the entry of a preliminary injunction or 5 U.S.C. § 705 stay, and at regular intervals thereafter, confirming compliance with the order." JA56.

Similarly, Plaintiffs' proposed order submitted in connection with their Second PI Motion (JA581-582) asked the District Court to order: "that Defendants shall not dismantle the [CIGP], including by terminating grant awards pursuant to the March 27, 2025 mass termination email or letters, or by pausing, freezing, impeding, or blocking the disbursement of grant funds . . . ." JA581. Plaintiffs again sought continuing judicial oversight over the CIGP with status reports to be filed by

13

Defendants "every two weeks" "for the entire performance period of each CIGP grant at issue" (*i.e.*, for years to come, as the performance period for the FY2024 grants ends on September 30, 2026). JA582.

On May 20, 2025, the District Court denied Plaintiffs' Second PI Motion, holding that Plaintiffs had failed to show a likelihood of success on the merits of their APA, separation of powers, and ultra vires claims. JA726 (Order); JA727-748 (Memorandum Opinion entered on May 29, 2025). First, the District Court found that it likely lacked subject matter jurisdiction over Plaintiffs' claims because they are essentially contract claims, which must be brought in the Federal Court of Claims under the Tucker Act. JA743-747. Second, the District Court found that Plaintiffs' separation of powers and ultra vires claims could not provide "an independent basis for the Court to exercise jurisdiction," because Plaintiffs "point to no language in the appropriations legislation, or any other law, to support" these claimed statutory and constitutional violations. JA745-746. Third and finally, the District Court held that Plaintiffs' allegations regarding the "dismantling" of the CIGP "do[es] not identify a discrete agency action" subject to APA review; rather "the amended complaint makes clear that the Plaintiffs seek to mount a wholesale, programmatic challenge to the Government's operation and management of the CIGP." JA747-748. Accordingly, the District Court found that Plaintiffs had failed to show a likelihood of success "for this independent reason." JA748.

In this appeal, Plaintiffs challenge the District Court's denial of their Second PI Motion. JA749 (Notice of Appeal).

## SUMMARY OF ARGUMENT

**I.A.** The District Court correctly held that it likely lacked jurisdiction over Plaintiffs' claims related to their FY2023 grants, which are in essence contract claims that must be brought in the Court of Federal Claims. The APA provides a limited waiver of sovereign immunity for claims against the United States seeking relief other than money damages, provided that another statute does not impliedly preclude review. Where a party seeks funding that it believes the government is obligated to pay under a contract or grant, the proper remedy is suit under the Tucker Act, not the APA.

The Supreme Court recently stayed a different district court's order to make grant payments in an analogous context, concluding that the government was likely to succeed in demonstrating that the district court lacked jurisdiction over claims seeking such relief. *Dep't of Educ. v. California*, 145 S. Ct. 966 (2025). A panel of this Court came to the same conclusion in *Sustainability Institute v. Trump*, 2025 WL 1587100 (4th Cir. June 5, 2025). Here, as in *California* and *Sustainability Institute*, Plaintiffs bring claims to enforce a contractual obligation to make funds available, and the only source of Plaintiffs' asserted rights to the funds are the grant

agreements in question. Thus, their claims are essentially contractual and belong in the Court of Federal Claims.

**B.** The grant agreements underlying Plaintiffs' claims are contracts subject to the Tucker Act. Plaintiffs did not make this argument to the District Court, and it is therefore forfeited in this appeal. Nevertheless, federal courts routinely find that the Tucker Act applies to grants like those in this case, and the grants here bear all the hallmarks of a contract.

**C.** Plaintiffs cannot manufacture subject matter jurisdiction over their claims in the District Court by framing them as nonstatutory separation of powers and ultra vires claims. Even if they could, the District Court correctly found that Plaintiffs failed to show a likelihood of success on these claims. Plaintiffs' separation of powers and ultra vires claims rely upon alleged violations of congressional appropriations, but the grant terminations did not violate the Appropriations Acts, or any other statute or regulation identified by Plaintiffs. The only statutes that mention the CIGP at all are the Appropriations Acts, and those Acts contain no statutory mandate requiring the agency to act in any specific manner, nor do they confer any rights upon Plaintiffs. Rather, Congress left to the agency's discretion the manner in which the funds appropriated for the CIGP are expended (or not expended).

**D.** Plaintiffs also cannot circumvent their ability to challenge the grant terminations by reframing their claims as challenging the "dismantling" of the CIGP.

The District Court correctly held that the alleged "dismantling" of the CIGP is not a discrete agency action subject to APA review; rather, Plaintiffs seek to bring a broad programmatic attack against government operations, which the APA does not allow.

**E.** The District Court also lacked jurisdiction over Plaintiffs' claims because the agency's decisions to terminate the grants in this context are committed to agency discretion by law. In deciding how to allocate resources, an agency must engage in "a complicated balancing of a number of factors" that are uniquely within the agency's "expertise," including "whether its 'resources are best spent' on one program or another; whether it 'is likely to succeed' in fulfilling its statutory mandate; whether a particular program 'best fits the agency's overall policies'; and, 'indeed, whether the agency has enough resources' to fund a program 'at all.'" *Lincoln v. Vigil*, 508 U.S. 182, 193 (1993) (quoting *Heckler v. Chaney*, 470 U.S. 821, 831 (1985)). Plaintiffs have failed to identify any statutory constraint that would permit review of the agency's decision to terminate specific grants. To the contrary, the Appropriations Acts—the only statutes that even mention the CIGP—contain no statutory mandate, and instead provide the agency with discretion regarding how the funds appropriated for the CIGP are expended (or not expended).

**II.** If Plaintiffs' appeal is successful, this Court cannot, and should not, enter the preliminary injunction that Plaintiffs seek. Rather, the case should be remanded

to the District Court for further development regarding the factual findings necessary to enter preliminary injunctive relief.

## STANDARD OF REVIEW

A preliminary injunction is reviewed for an abuse of discretion. *Frazier v. Prince George's County*, 86 F.4th 537, 543 (4th Cir. 2023). "In determining whether the district court abused its discretion, [this Court] review[s] the district court's factual findings for clear error and its legal conclusions *de novo*." *Id.*

## ARGUMENT

I.  **The District Court Correctly Held That Plaintiffs Are Not Likely to Succeed on the Merits of Their Claims and, Therefore, Are Not Entitled to a Preliminary Injunction.**

   A.  **Plaintiffs' Claims Related to the FY2023 Grants[8] are Contract Claims Over Which the United States Court of Federal Claims Has Exclusive Jurisdiction.**

"The United States is immune from suit unless it unequivocally consents."

*Maine Community Health Options v. United States*, 590 U.S. 296, 322 (2020). The

_____

[8] While the Tucker Act precludes District Court jurisdiction over the vast majority of Plaintiffs' claims, the government does not argue that the Tucker Act applies to two of the Plaintiffs—Immigrant Law Center of Minnesota ("ILCM") and Massachusetts Immigrant and Refugee Advocacy Coalition, Inc. ("MIRA"). This is because ILCM and MIRA were awarded FY2024 grants, which expressly disclaim the availability of money damages and jurisdiction in the Court of Federal Claims. *See* JA464, JA596. Nevertheless, though this legal issue was not determined by the District Court, the government maintains that subject matter jurisdiction is lacking over all of the claims here, including those brought by ILCM and MIRA, because Plaintiffs challenge funding decisions that are committed to agency discretion by law. *See infra* at 42-44. In addition, the government asserts that all Plaintiffs are

18

APA provides a limited waiver of sovereign immunity for claims "seeking relief other than money damages." 5 U.S.C. § 702. But the APA's waiver "comes with an important carveout": it does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (quoting 5 U.S.C. § 702). That carve-out "prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes." *Id.*

Parties that seek to access funds that the government is purportedly obligated to pay under contracts or grants[9] must typically proceed under the Tucker Act, not the APA. The Tucker Act provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The D.C. Circuit has therefore "held that the Tucker Act 'impliedly forbids'" the bringing of "contract actions" against "the government in a federal district court" under the APA. *Albrecht v. Committee on Emp. Benefits of*

---

precluded from challenging the alleged dismantling of the CIGP because such a programmatic attack does not describe a discrete agency action subject to judicial review. *See infra* at 38-42.

[9] The CIGP grants awarded to Plaintiffs are contracts subject to the Tucker Act. *See infra* at 30-31.

*the Fed. Reserve Emp. Benefits Sys.*, 357 F.3d 62, 67-68 (D.C. Cir. 2004) (citations omitted). This jurisdictional barrier ensures that contract claims against the government are channeled into the court that has "unique expertise" in that area, *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985), and which Congress has generally not empowered to grant injunctive relief, *James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998).

In determining whether a particular action is "at its essence a contract action" subject to the Tucker Act or instead a challenge properly brought under the APA, this Court applies the standard articulated by the D.C. Circuit in *Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982), which looks at both "the source of the rights upon which the plaintiff bases its claims" and "the type of relief sought (or appropriate)." *Id.* at 968. *See also United States v. J & E Salvage Co.*, 55 F.3d 985, 987-88 (4th Cir. 1995) (applying *Megapulse*). When a plaintiff's claim is premised on a contract with the government and seeks to compel the government to pay sums due under the contract, that is a Tucker Act claim, not an APA claim. *Megapulse*, 672 F.2d at 967-971.

Both the Supreme Court and this Court recently considered the Tucker Act/APA jurisdictional divide in the grant termination context and determined that the Tucker Act likely applied to the plaintiffs' claims, thus precluding district court jurisdiction over them. *See Dep't of Educ. v. California*,

145 S. Ct. 966 (2025); *Sustainability Institute v. Trump*, App. No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025).

In *California*, the plaintiffs challenged, under the APA, the Department of Education's termination of grants previously awarded to public schools and universities across the country under certain federal grant programs. The district court entered a temporary restraining order ("TRO"), which "enjoin[ed] the Government from terminating various education-related grants" and "required the Government to pay out past-due grant obligations and to continue paying obligations as they accrue." 145 S. Ct. at 968. The Supreme Court granted the government's application to stay the TRO pending appeal, finding that "the Government is likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA," because "the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" *Id.* The Supreme Court explained that "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the District Court ordered here." *Id.*[10]

---

[10] *Am. Ass'n of Colleges for Teacher Educ. v. McMahon*, App. No. 25-1281 (4th Cir.) ("*AACTE*"), involves a similar challenge to the termination of education-related grants by the Department of Education. In *AACTE*, this Court stayed a preliminary injunction entered by the district court, relying upon the Supreme Court's decision in *California*. 2025 WL 1232337, at *1 (4th Cir. Apr. 10, 2025). The appellate briefing before this Court is scheduled to be completed by August 6, 2025. *See* App.

*Sustainability Institute* involved similar challenges under the APA, as well as separation of powers and ultra vires theories, to the termination of environmental-related grants administered by various federal agencies. The district court granted the plaintiffs injunctive relief, ordering the government to restore access to the grant funding. *See Sustainability Institute v. Trump*, Case No. 25-cv-2152-RMG, 2025 WL 1486978, (D.S.C. Apr. 29, 2025). The district court purported to distinguish *California*, in part because plaintiffs framed their claims as challenging "Defendants' implementation of a broad, categorical freeze on obligated funds . . . [which] was not based on individualized assessment of any particular grant terms and conditions or agreements between the Parties . . . ." *Id.* at *6.

This Court rejected that distinction and granted the government's motion to stay the injunction pending appeal, finding that "the Government is 'likely to succeed' in showing that the district court lacked subject matter jurisdiction over Plaintiffs' claims," because of the Tucker Act's grant of exclusive jurisdiction to the Court of Federal Claims "over suits based on any express or implied contract with the United States." 2025 WL 1587100, at *1 (quoting *California*, 145 S. Ct. at 968). Regarding the plaintiffs' separation of powers and ultra vires claims, this Court

No. 25-1281, Doc. 34 (briefing order regarding government's appeal of preliminary injunction).

found that "it appears unlikely" that such claims "would provide a detour around the Tucker Act." *Id.* at *2.

Just like the plaintiffs in *California* and *Sustainability Institute*, Plaintiffs in this case bring claims challenging the termination of their federal grants. Consistent with the Supreme Court and this Court's rulings in those cases, the District Court here found that it likely lacked jurisdiction over their claims in light of the Tucker Act. JA743-747.

Applying the *Megapulse* test here, "the source of the rights upon which the plaintiff bases its claims" are Plaintiffs' grant agreements with the government. Plaintiffs filed this action because they have contracts with the government (in the form of federal grants, *see infra* at 30-31),[11] which allow them to be reimbursed for certain eligible expenses[12]; those grants have been terminated, such that they can no longer incur expenses or seek reimbursement[13]; these terminations have allegedly harmed Plaintiffs (*see* Op. Br. at 49-55, describing alleged harms resulting from the grant terminations); and Plaintiffs seek redress through this lawsuit by having their

---

[11] The grants are included in the Joint Appendix at JA261-500, JA583-605.

[12] Each of the Plaintiffs filed declarations explaining that they access the grant funds by submitting requests for reimbursement of allowable costs incurred. *See* JA502 (¶7); JA512 (¶6); JA519 (¶6); JA525 (¶7); JA532-533 (¶9); JA540 (¶8); JA546 (¶5); JA558 (¶5); JA567 (¶5); JA574-575 (¶6).

[13] The Termination Letters are included in the Joint Appendix at JA234-260, JA606-608.

grants reinstated and funding restored (*see, e.g.*, JA581, Plaintiffs' proposed order submitted to the District Court granting a preliminary injunction and ordering that Defendants shall not "terminat[e] grant awards" or "paus[e], freez[e], imped[e], or block[] the disbursement of grant funds").

Plaintiffs urge that the sources of their rights are not their grants, but rather "the Constitution, the APA, two appropriations acts, the Homeland Security Act, and the Uniform Guidance regulations." Op. Br. at 27. In this vein, Plaintiffs argue that "[t]he court does not need to interpret (or even look at) the grant terms." *Id.* But this Court rejected this very argument in *Sustainability Institute*, explaining:

> Like the plaintiffs in *California*, Plaintiffs here contend that their 'dispute does not hinge on the terms of a contract between the parties.' . . . Yet like the grants in *California*, the grants here were awarded by federal executive agencies to specific grantees from a generalized fund. ***While the appropriations statutes authorize the agencies to award grants, it is the operative grant agreements which entitle any particular Plaintiff to receive funds***.

2025 WL 1587100, at *2 (emphasis added). Similarly, in *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985), the plaintiff attempted to argue that the source of their rights was the Debt Collection Act, rather than its contract with the government. The D.C. Circuit rejected this argument, explaining:

> Spectrum seeks an injunction requiring the government to pay monies owed for computer hardware. The right to these payments is created in the first instance by the contract, not the Debt Collection Act. The DCA, even if it applied, confers no such right in the absence of the contract itself. ***Although the DCA might impose procedural requirements on the government having some impact on the contract,***

*the Act in no way creates the substantive right to the remedy Spectrum seeks*.

*Id.* at 894 (emphasis added).[14]  In other words, for purposes of the jurisdictional analysis, the essential query is whether the plaintiff's right to the remedy sought arises out of its agreement with the government or other substantive law.

Here, it is the operative grant agreements, not the sources of law identified by Plaintiffs, that give Plaintiffs any right to money, *i.e.*, the relief they seek. Significantly, the only federal statutes that even mention the CIGP are the

---

[14] This point is further supported by a long line of Circuit Court cases consistently rejecting attempts by plaintiffs to reframe a contract dispute in constitutional or statutory terms so as to subject it to district court jurisdiction (indeed, the point of the *Megapulse* standard is to determine the "essence" of the claim regardless of how it is pled).  *See, e.g.*, *Portsmouth Redevelopment & Housing Auth. v. Pierce*, 706 F.2d 471, 474-75 (4th Cir. 1983) ("the Claims Court is the proper forum for this action, whether it is characterized as one in contract or one to interpret provisions of the Constitution, federal statutes, or regulations pertaining to the contract" in case where "the primary objective . . . [was] to recover money allegedly wrongfully withheld by the federal government"); *J & E Salvage Co.*, 55 F.3d at 987-88 ("It is well-established . . . that disguised contract actions may not escape the CDA. . . . Neither contractors nor the government may bring a contract action in federal district court simply by recasting claims in tort language or as some statutory or regulatory violation," and rejecting effort by United States, as plaintiff, to present its case as a tort action in order to manufacture federal district court jurisdiction, finding "[t]he crux of the case rests on a specific contract" – specifically, a "Notice of Award" from the government to defendant); *Am. Sci. & Eng'g, Inc. v. Califano*, 571 F.2d 58, 61 (1st Cir. 1977) ("courts have consistently rejected attempts to cast a contract dispute in different terms so as to subject it to the jurisdiction of the district court," and holding that, notwithstanding plaintiff's characterization in its complaint of the dispute "as an agency action '*ultra vires*' of its authority, in violation of [agency] regulations and due process of law," "it is clear that this is essentially a contract dispute" to which the Tucker Act applied).

Appropriations Acts, which merely appropriate to the CIGP "$25,000,000, to remain available until September 30, 2024." 2023 Appropriations Act, 136 Stat. 4745. The 2023 Appropriations Act confers no rights on Plaintiffs, nor does it dictate anything about the CIGP beyond the appropriation of funding to remain available until a certain date—which date (in the case of the 2023 Appropriations Act) has long passed. *Id.* The Homeland Security Act says nothing at all about the CIGP, nor could it, because this legislation predates the CIGP by seven years. *See infra* at 36.

The second prong of *Megapulse*, "the type of relief sought (or appropriate)," also reflects the contractual nature of this action. At bottom, Plaintiffs seek to have their grants reinstated and funding restored. Tellingly, Plaintiffs submitted a proposed order to the District Court granting their motion for preliminary injunction, which sought to prohibit the government from "terminating grant awards" or "pausing, freezing, impeding, or blocking the disbursement of grant funds." JA581.[15] While framed in ostensibly injunctive terms, Plaintiffs ask for the quintessential contractual remedy of specific performance and the payment of money owed under their contracts. The appropriate vehicle for a claim seeking "to recover money allegedly wrongfully withheld by the federal government" is a

---

[15] *See also*, *e.g.*, Op. Br. at 19 ("That is all the Nonprofits seek: injunctive relief that allows them to continue carrying out their grant work under CIGP."); *id.* at 27 ("The Nonprofits principally seek an order enjoining DHS from eliminating CIGP, which would allow them to continue to carry out their CIGP-funded programs and later seek reimbursement for completed work.").

Tucker Act action in the Court of Federal Claims, not an APA action. *Portsmouth*, 706 F.2d at 474 ("Claims Court jurisdiction cannot be avoided by framing an essentially monetary claim in injunctive or declaratory terms."); *see also Ingersoll-Rand*, 780 F.2d at 80 ("a request for specific performance must be resolved by the Claims Court").

Plaintiffs primarily rely upon *Bowen v. Massachusetts*, 487 U.S. 879 (1988), in arguing that the District Court has jurisdiction to consider their claims because they purport to seek "prospective, equitable relief." Op. Br. at 18-22, 27-32. This now-familiar argument was considered and rejected by the Supreme Court in *California* and this Court in *Sustainability Institute*. *See* 2025 WL 1587100, at *2 (in staying preliminary injunction pending appeal, noting that "the Supreme Court distinguished *Bowen* in *California*, highlighting the meaningful difference between the relief in that case and an order 'to enforce a contractual obligation to pay money' along the lines of what the district court ordered here"). Furthermore, in *Bowen*, the plaintiff (the State of Massachusetts) did not have any kind of contract with the government. Rather, *Bowen* involved a dispute over the policy governing federal contributions to the state's Medicaid program, the resolution of which could "requir[e] the Secretary to modify future practices" as part of the "complex ongoing relationship between the parties." 487 U.S. at 905. That is not this case, where specific monetary payments pursuant to a contractual agreement is the entire point.

Indeed, any breach-of-contract claim relating to the payment of money could be similarly recast as seeking future compliance with the contract rather than money damages. That is not enough to take such a claim outside the scope of the Tucker Act. *See U.S. Conference of Catholic Bishops v. U.S. Dep't of State*, Case No. 25-cv-00465-TNM, 2025 WL 763738, at *5 (D.D.C. Mar. 11, 2025) (When claims like plaintiffs' are "[s]tripped of [their] equitable flair, the requested relief seeks one thing: . . . the Court to order the Government to stop withholding the money due" under the grants. Such a claim for "the classic contractual remedy of specific performance" "must be resolved by the Claims Court." (quotation omitted)).

Finally, under Section 704 of the APA, agency action is only reviewable if "there is no other adequate remedy in a court." 5 U.S.C. § 704. Here, Plaintiffs have an adequate remedy, because they can seek any contract damages they may have in the Court of Federal Claims. That fact forecloses APA review in this case.

Plaintiffs' argument that they cannot obtain the precise relief requested in the Court of Federal Claims, Op. Br. at 31-32, does not change the result. This Court has repeatedly held: "That the Court of Claims cannot provide the precise relief requested is no grounds for denying its jurisdiction over the claim." *Ginsberg v. United States*, 707 F.2d 91, 93-94 (4th Cir. 1983); *see also Portsmouth*, 706 F.2d at 474 (similar). What kinds of claims can be brought against the government and the remedies for redress of those claims are Congressional policy decisions. In the

Tucker Act, Congress created a path for bringing contract claims against the United States. In doing so, Congress precluded the relief of specific performance and other types of injunctive relief. That is a policy decision. It does not warrant a finding of jurisdiction in district court or a recharacterization of what are in essence contract claims in order to create a remedy that Congress did not provide. As the D.C. Circuit explained in *Ingersoll-Rand*:

> In the Claims Court, [the plaintiff] will have available to it a damages remedy for wrongful termination of the contract. . . . [The plaintiff's] argument that this remedy is inadequate because it does not include reinstatement of the contract is unavailing. Congress has established, in the CDA,[16] a scheme for the resolution of contract disputes. That scheme includes a deliberate limitation on certain types of remedies. To hold that the CDA does not apply merely because, under that scheme, plaintiff cannot receive all its requested remedies, would intolerably upset the congressional purpose underlying the Act.

780 F.2d at 80. *See also Albrecht*, 357 F.3d at 68 ("We have held that the Tucker Act impliedly forbids—in APA terms—not only district court awards of money damages, which the Claims Court may grant, but also injunctive relief, which the Claims Court may not." (quotation omitted)).

---

[16] The Contract Disputes Act (the "CDA") has the same jurisdictional limits as the Tucker Act in that both apply to claims related to "any express or implied contract with the United States," *see* 28 U.S.C. § 1491(a)(1), 41 U.S.C. § 7102, except that the CDA generally applies to government procurement contracts (*i.e.*, where the government is buying something).

**B.    The Grant Agreements Awarded to Plaintiffs Are Contracts That Are Subject to the Tucker Act**

For the first time in this appeal, Plaintiffs contend that their grant agreements with the Government are not contracts subject to the Tucker Act.  Op. Br. at 22-23.  Plaintiffs never made this argument in any of the four briefs they submitted to the District Court seeking a preliminary injunction.  *See* Case No. 25-cv-00885-LKG, ECF Nos. 30-1, 36, 53-1, 66.  Plaintiffs' counsel merely made a passing reference to the argument at the hearing on Plaintiffs' Second PI Motion, but stated "I don't think the court has to answer that or has to weigh into it."  JA658.  By failing to adequately raise this argument before the District Court, Plaintiffs forfeited the issue for appeal.  *See*, *e.g.*, *In re Under Seal*, 749 F.3d 276, 285-87 (4th Cir. 2014) ("'[I]f a party wishes to preserve an argument for appeal, the party must press and not merely intimate the argument during the proceedings before the district court.'"); *Sines v. Hill*, 106 F.4th 341, 349 (4th Cir. 2024).

In any event, the argument is wrong.  It absurdly suggests that no federal grant could be subject to Tucker Act jurisdiction—a notion that is contradicted by the recent rulings in *California* and *Sustainability Institute*, which each applied the Tucker Act to cases challenging the termination of federal grants, as well as longstanding precedent treating federal grants as contracts subject to Tucker Act jurisdiction.  *See*, *e.g.*, *Bennett v. New Jersey*, 470 U.S. 632, 638 (1985) (noting that "many . . . federal grant programs" are "much in the nature of a contract") (quotation

omitted); *Columbus Reg'l Hosp v. United States*, 990 F.3d 1330, 1338 (Fed. Cir. 2021) ("[W]e have followed our predecessor court in treating federal grant agreements as contracts when the standard conditions for a contract are satisfied, including that the federal entity agrees to be bound."); *United States v. Cnty. Sch. Bd. of Prince George Cnty., Va.*, 221 F. Supp. 93, 99 (E.D. Va. 1963) ("It has long been recognized that federal grants authorized by Congress create binding contracts," citing *Burke v. Southern Pacific Railroad*, 234 U.S. 669, 679 (1914) and *United States v. Northern Pacific Ry. Co.*, 256 U.S. 51, 63 (1921)).

Plaintiffs' grant agreements in this case bear all the hallmarks of a contract. They are written agreements, agreed to by both the government and grantee, and specify the amount the government agreed to pay, the work the grantee was to perform in exchange for the payment, the performance period for the work, and all applicable policies and procedures, including the conditions under which the grant could be terminated. *See* JA261-500, JA583-605 (grant agreements). The grant agreements are contracts.

### C. The District Court Does Not Have "Freestanding" Jurisdiction Over Plaintiffs' Separation of Powers and Ultra Vires Claims, Which, in Any Case, Are Not Likely to Succeed on the Merits.

1. Plaintiffs also bring separation of powers and ultra vires claims grounded in the same conduct as their APA challenges. *See* Op. Br. at 47-49; *see also* JA52-53 (Am. Compl. ¶¶ 147-150), JA55 (Am. Compl. ¶ 160). As explained above, courts

do not allow plaintiffs to manipulate district court jurisdiction over claims sounding in contract by reframing such claims as constitutional claims. *See* cases cited *supra* at 24-26 & note 25. In *Sustainability Institute*, this Court recently rejected such an effort under similar circumstances. Regarding the plaintiffs' claims that the terminations of their grants violated separation of powers and were ultra vires, this Court found that "it appears unlikely" that such claims "would provide a detour around the Tucker Act." 2025 WL 1587100, at *2 (citing *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 327-328 (2015)). The same logic forecloses Plaintiffs' separation of powers and ultra vires claims in this case.

Indeed, just weeks ago, the Supreme Court issued a ruling in *Nuclear Regul. Comm'n v. Texas*, 145 S. Ct. 1762 (June 18, 2025), in which it held that "[b]ecause ultra vires review could become an easy end-run around the limitations of . . . judicial-review statutes," such review is "strictly limited." *Id.* at 1775. "Ultra vires review is unavailable if, as is usually the case, a statutory review scheme provides aggrieved persons 'with a meaningful and adequate opportunity for judicial review,' or if a statutory review scheme forecloses all other forms of judicial review." *Id.* at 1776. Because Congress has directed that essentially contractual claims, like those brought by Plaintiffs in this case, must be brought under the Tucker Act, that statute precludes Plaintiffs' nonstatutory claims, just as it precludes Plaintiffs' APA claims. In addition, Plaintiffs have an adequate means of vindicating their asserted right to

grant funds, because they may bring contract actions in the Court of Federal Claims. Such actions would allow them to recover as damages any grant funds to which they are lawfully entitled.

The Supreme Court further explained in *Nuclear Regul. Comm'n* that ultra vires review applies "only when an agency has taken action entirely 'in excess of its delegated powers and contrary to a *specific prohibition*' in a statute." *Id.* at 1775–76. No such specific prohibition exists here. *See* JA745-746 (as further explained *infra* at 34-38, the District Court correctly found that "no language in the relevant appropriations legislation, or any other law" supports Plaintiffs' separation of powers and ultra vires claims). To the contrary, the grants themselves specifically contemplate that the agency can terminate the grants (*see supra* at 7-8), as do the Uniform Guidance regulations incorporated therein. *See* 2 C.F.R. § 200.340(a) (JA609) ("The Federal award may be terminated . . . (2) By the Federal awarding agency . . . to the greatest extent authorized by law, if an award no longer effectuates the program goals or agency priorities."). Thus, the notion that the agency cannot terminate the grants that it administers—or that doing so is ultra vires or violates separation of powers principles—is contrary to the governing contracts and regulations.

Moreover, Plaintiffs' nonstatutory claims are not bona fide, freestanding constitutional claims, because they merely assert that the agency exceeded its

statutory authority in allegedly "dismantling" the CIGP. "[C]laims simply alleging that [the executive branch] has exceeded [its] statutory authority are not 'constitutional' claims." *Dalton v. Specter*, 511 U.S. 462, 473 (1994). Here, although Plaintiffs invoke the Appropriations Clause and the separation of powers, both claims hinge on the argument that the agency violated the Appropriations Acts. *See, e.g.*, Op. Br. at 16 ("because DHS refused to spend congressionally appropriated funds, it has violated the separation of powers and acted ultra vires"); *id.* at 48 ("Congress appropriated funds for CIGP and DHS is 'tak[ing] measures incompatible with the expressed or implied will of Congress'"); *id.* at 49 ("DHS points to nothing to suggest that it may entirely end a program for which Congress appropriated funding and which is central to Defendants' statutory mandate of citizenship and naturalization promotion."). Accordingly, Plaintiffs' asserted "constitutional" claims are really "statutory one[s]," *Dalton*, 511 U.S. at 474, as they assert that the agency exceeded its statutory authority. *See Ass'n for Educ. Fin. & Pol'y, Inc. v. McMahon*, Case No. 25-cv-00999-TNM, 2025 WL 1568301, at *4, *9 (D.D.C. June 3, 2025) (dismissing plaintiff's separation of powers claim, which was "just a repackaging of the APA challenge," because plaintiff was "truly alleging a statutory violation, not a constitutional issue," which is foreclosed under *Dalton*).[17]

---

[17] Nothing in *Webster v. Doe*, 486 U.S. 592 (1988), relied upon by the amicus curiae in this case (Doc. 26), suggests to the contrary. In *Webster*, the Supreme Court held

2. Furthermore, separate and apart from the Tucker Act jurisdictional issue, the District Court correctly found that Plaintiffs failed to show a likelihood of success on the merits of their separation of powers and ultra vires claims, because Plaintiffs "point to no language in the relevant appropriations legislation, or any other law," to support these claims. JA745-746. These claims presume that the terminations contravened congressional appropriations. *See* Op. Br. at 47-49; *see also* JA52-53 (Am. Compl. ¶¶ 147-150), JA55 (Am. Compl. ¶ 160). However, the grant terminations did not violate the Appropriations Acts, nor any other statute or regulation cited by Plaintiffs (*i.e.*, the Homeland Security Act and the Uniform Guidance), for the following reasons[18]:

### a. The grant terminations did not violate the Appropriations Acts.

"[A]n appropriation is simply a law that authorizes expenditures from a specified source of public money for designated purposes." *Consumer Fin. Prot. Bureau v. Cmty. Fin. Servs. Ass'n of Am.*, 601 U.S. 416, 424 (2024). Here, the

---

that the CIA's decision to terminate a CIA security officer, allegedly due to his sexual orientation, was committed to the agency's discretion by law and therefore not subject to APA review. 486 U.S. at 600-01. Nevertheless, the Supreme Court held that the plaintiff could bring claims asserting constitutional due process and equal protection violations, which were not precluded by law and which did not rely upon any statutory violation. *Id.* at 601-04. *Webster* does not permit Plaintiffs to simply dress up their APA claims in constitutional language in order to escape the jurisdictional confines of the APA and the Tucker Act.

[18] For the same reasons, the grant terminations were not contrary to law under the APA.

Appropriations Acts authorize funding for the CIGP and provide that funding for the "necessary expenses" of USCIS for the CIGP is "to remain available" until September 30, 2024 in the case of FY2023 awards, and until September 30, 2025 in the case of FY2024 awards. *See supra* at 6 (quoting both Appropriations Acts in full). The Appropriations Acts contain no statutory mandate requiring USCIS to act in any specific manner, nor do they confer any rights upon Plaintiffs. Rather, Congress left to the agency's discretion the manner in which those appropriated funds are expended (or not expended). The grant terminations at issue in this case are inherent in the agency's wide discretion to allocate funds generally appropriated for the CIGP. *See infra* at 42-44.

### b. *The grant terminations did not violate the Homeland Security Act.*

Plaintiffs allege that the grant terminations violated the Homeland Security Act—specifically, 6 U.S.C. § 111(b)(1)(E) and 6 U.S.C. § 271(f)(2). Op. Br. at 47. This is wrong.

*First, regarding Section 111(b)(1)(E)*. Congress passed the Homeland Security Act in 2002. Section 111 establishes the Department of Homeland Security and sets forth its mission. Included in that mission, following "prevent[ing] terrorist attacks," "minimiz[ing] the damage" from terrorist attacks that do occur, and other similar security-related functions, is to "ensure that the functions of the agencies and subagencies within the Department that are not related directly to securing the

homeland are not diminished or neglected except by a specific explicit Act of Congress." 6 U.S.C. § 111(b)(1)(E). Plaintiffs argue that this language requires a "specific explicit Act of Congress" before DHS could terminate Plaintiffs' grants. Op. Br. at 47. That is a stretch. The Homeland Security Act does not so much as mention the CIGP. And given that the CIGP did not even begin until 2009 – seven years after Section 111(b)(1)(E) was written into law – it is implausible that Congress had this program in mind when crafting DHS's general mission statement. Plaintiffs' argument absurdly suggests that any program ever created by USCIS could not later be reconsidered without an act of Congress.

*Second, regarding Section 271(f)(2).* Section 271 of the Homeland Security Act established USCIS, and subsection (f) provided for the creation of an Office of Citizenship at USCIS. 6 U.S.C. § 271(a), (f). Under Section 271(f)(2), the Office of Citizenship is responsible "for promoting instruction and training on citizenship responsibilities for aliens interested in becoming naturalized citizens of the United States, including the development of educational materials." *Id.* § 271(f)(2). Plaintiffs essentially argue that USCIS cannot comply with Section 271(f)(2) without the CIGP. Op. Br. at 47. But this statute says nothing about the CIGP (or any grant program). And, again, the CIGP began in 2009 – seven years after Section 271(f)(2) was enacted. Thus, Plaintiffs' argument implausibly suggests that USCIS failed to meet its statutory obligations for the first seven years of its existence. This

is nonsensical and, in any event, not correct. USCIS fulfills this statutory mandate in ways beyond its administration of the CIGP, including by maintaining a "Citizenship Resource Center" website, https://www.uscis.gov/citizenship, which provides numerous resources to lawful permanent residents, educators, and organizations like Plaintiffs.

> **c.** *To the extent Plaintiffs rely upon alleged violations of the Uniform Guidance, Plaintiffs state a breach of contract claim over which the District Court lacks subject matter jurisdiction. Nevertheless, the terminations complied with the grant terms and conditions, including the Uniform Guidance.*

The Uniform Guidance sets forth the terms and conditions of federal grants and is incorporated by reference into each of the Plaintiffs' CIGP grants. *See* JA279, JA304, JA331, JA358, JA385, JA412, JA439, JA465, JA490, JA597. Accordingly, any claim based upon an alleged breach of the Uniform Guidance merely states a claim for breach of contract against the United States. *Boaz Housing Auth. v. United States*, 994 F.3d 1359, 1367 (Fed. Cir. 2021) ("That contractual provisions either are required by or incorporate governing regulations does not make those obligations any less contractual in nature."). Such claims may only be brought in the Court of Federal Claims. *See supra* at 18-27.

Nevertheless, DHS terminated Plaintiffs' grants consistent with the terms and conditions of the grants, including the Uniform Guidance. The "Termination" provision included in each of the grants provides that "DHS may terminate this

Award by giving written notice to the other party at least thirty (30) calendar days prior to the effective date of the termination." JA278, JA303, JA330, JA357, JA384, JA411, JA438, JA489, JA464, JA596 (quoted in full *supra* at 7-8). In addition, pursuant to the Uniform Guidance, a federal agency may terminate contracts or grants for various reasons—*e.g.*, a change in policy priorities. *See* 2 C.F.R. § 200.340(a)(2) (JA609).

Here, the Termination Letters to Plaintiffs complied with the "Termination" provision of the grants, as well as the requirements of Uniform Guidance by, *inter alia*, providing notice of termination and setting an effective date 30 days after the date of the notice; identifying the reasons for the termination; permitting allowable costs prior to issuance of the notice; and setting forth the process for objecting to and challenging the termination. *See* JA234-260, JA606-608 (Termination Letters). While Plaintiffs may have been unhappy with the level of information provided to them in connection with the terminations (Op. Br. at 7-8, 45-46), nothing in the terms and conditions of the grants (including the Uniform Guidance) required the agency to do more.

### D. The Alleged "Dismantling" of the CIGP Is Not a Discrete Agency Action Subject to Judicial Review under the APA.

Plaintiffs cannot circumvent their ability to challenge the grant terminations at issue in this case by characterizing their claim as a challenge to the "dismantling" of the CIGP, as the District Court correctly held that the alleged "dismantling" of the

CIGP is not a discrete agency action subject to judicial review under the APA. JA747-748. District courts lack subject matter jurisdiction over APA claims "if the plaintiff fails to challenge a particular 'agency action' that is fit for review." *City of New York v. U.S. Dep't of Defense*, 913 F.3d 423, 430 (4th Cir. 2019). The APA defines "agency action" to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). Under this definition, agency action "is limited to those acts that are 'circumscribed' and 'discrete.'" *City of New York*, 913 F.3d at 431 (quoting *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004)). When challenging agency action, the plaintiff must "identify specific and discrete governmental conduct, rather than launch a 'broad programmatic attack' on the government's operations." *Id.* Thus, the APA distinguishes between "***discrete acts, which are reviewable, and programmatic challenges, which are not***." *Id.* (emphasis added). Otherwise, "courts would be forced to enter a disfavored 'obey the law' injunction, [] or to engage in day-to-day oversight of the executive's administrative practices." *Id.*

Applying these principles here, Plaintiffs' challenge to the alleged "dismantling" of the CIGP writ large must fail. Plaintiffs' "broad programmatic attack" set forth in their Amended Complaint is not a "circumscribed" and "discrete" agency action that is subject to judicial review. The relief sought in Plaintiffs'

proposed order, JA581-582, makes the nature of their claims in this regard clear. Plaintiffs seek broad injunctive relief—specifically, an order "that Defendants shall not dismantle [the CIGP], including by terminating grant awards . . . or by pausing, freezing, impeding, or blocking the disbursement of grant funds . . . , or on the basis of any memoranda or other policy documents implementing any of the above agency actions." JA581. Plaintiffs further request "that Defendants file a status report within 48 hours of the issuance of this order, and every two weeks thereafter for the entire performance period of each CIGP grant at issue, confirming compliance with this Order." JA582. In other words, Plaintiffs ask the District Court to inject itself into the agency's day-to-day administration of the CIGP until the end of the grant periods (which, for the FY2024 grants, lasts through September 30, 2026). This would be a wholly inappropriate exercise of judicial power over executive functions, which the APA does not authorize. *City of New York*, 913 F.3d at 434 (plaintiff's request to have the agency submit monthly reports to the court resolved "any doubt about the nature of the cities' claim," as "the obvious inability for a court to function in such a day-to-day managerial role over agency operations is precisely the reason why the APA limits judicial review to discrete agency actions."). *See also AIDS Vaccine Advoc. Coal. v. Dep't of State*, 770 F. Supp. 3d 121, 140-43 (D.D.C. Mar. 10, 2025) (in grant termination case, denying plaintiffs' request to enjoin "large-scale terminations" of individual grants and to require government to submit status

reports to the court every two weeks, explaining "[t]his would devolve into the type of intensive supervision of day-to-day agency activities, as well as inquiry into the terms of individual grant awards, that the Court has expressly rejected"); *Ass'n for Educ. Fin. & Pol'y, Inc.*, 2025 WL 1568301, at *7 ("the Association's challenge to the mass termination of programs via contract cancellations is precisely the sort of broadside attack that *Lujan* [*v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990)] forbids.").

Plaintiffs argue that the Noem Memorandum and the Freeze Letters constitute reviewable agency actions that, together with the Termination Letters, make up the agency's alleged "dismantling" of the CIGP. Op. Br. at 38-40. But "plaintiffs cannot get 'wholesale' improvement to agency operations under the APA by bundling together a collection of discrete events, presenting them as facets of a single event, and then challenging that event instead of the individual actions." *Ass'n for Educ. Fin. & Pol'y, Inc.*, 2025 WL 1568301, at *5. In any case, as discussed above, the Termination Letters are not subject to review in district court regardless of whether they are characterized as part of a "dismantling." And the Noem Memorandum and Freeze Letters do not direct the "dismantling" that Plaintiffs purport to challenge. Rather, by their terms, they merely froze funding pending review. JA229, JA230.

Furthermore, challenges to both the Noem Memorandum and the Freeze Letters are moot. Supervening events over the course of litigation cause issues to become moot where a court's decision would not have "any practical effect in the

real world," as "[a]ll [the court] could do is issue an opinion advising what the law would be upon a hypothetical state of facts" that no longer exist. *Eden, LLC v. Justice*, 36 F.4th 166, 170 (4th Cir. 2022). This is the case here. A finding that the Noem Memorandum and/or the Freeze Letters were unlawful in some way would have no impact in the real world given the supervening Termination Letters.

### E. Funding Decisions Are Committed to Agency Discretion and Are Not Subject to Arbitrary-and-Capricious Review.[19]

Even if Plaintiffs' claims were not subject to the Tucker Act, Plaintiffs are unlikely to succeed on their APA claims because they challenge funding decisions by DHS that are committed to the agency's discretion by law. 5 U.S.C. § 701(a)(2). Although the APA presumes that agency action can be judicially reviewed, "under § 701(a)(2), agency action is not subject to judicial review 'to the extent that' such action 'is committed to agency discretion by law.'" *Lincoln v. Vigil*, 508 U.S. 182, 190-91 (1993).

In *Lincoln*, the Supreme Court held that the "allocation of funds from a lump-sum appropriation" is an "administrative decision traditionally regarded as committed to agency discretion," and thus such a decision is not reviewable under the APA. *Id.* at 192. The Court noted, however, that "an agency is not free simply

---

[19] The District Court did not address this argument in its Memorandum Opinion. *See* JA727-748. Nevertheless, it is well settled that "[a]n appellee may defend, and this Court may affirm, the district court's judgment on any basis supported by the record." *Sloas v. CSX Transp. Inc.*, 616 F.3d 380, 389 (4th Cir. 2010).

to disregard statutory responsibilities: Congress may always circumscribe agency discretion to allocate resources by putting restrictions in the operative statutes . . . ." *Id.* at 193. But as long as the agency abides by the relevant statutes (and whatever self-imposed obligations may arise from regulations or grant instruments), the APA "gives the courts no leave to intrude" via arbitrary-and-capricious review. *Id.*

Although *Lincoln* involved lump-sum appropriations, in *Milk Train, Inc. v. Veneman*, 310 F.3d 747 (D.C. Cir. 2002), the D.C. Circuit extended its logic to more specific appropriations, holding that where Congress "left to the Secretary the decision about how the moneys" appropriated for a particular program "could best be distributed consistent with" the governing statute, such decisions were not subject to judicial review under the APA. *Id.* at 751-52. *See also Policy & Research, LLC v. U.S. Dep't of Health & Human Servs.*, 313 F. Supp. 3d 62, 75-76 (D.D.C. 2018) (Jackson, J.) ("*Milk Train* thus makes quite clear that even funding decisions related to a specific appropriation for a specific program can be properly deemed committed to agency discretion."). Accordingly, DHS's decision to terminate a grant is reviewable—at most—only for compliance with the terms of the governing statutes, regulations, and funding instruments. Such compliance is discussed *supra* at 34-38. As explained, Plaintiffs have failed to identify any statutory constraints that would permit review of the agency's decision to terminate specific grants. Plaintiffs err in

attempting to subject the decision to terminate the funding to arbitrary-and-capricious review.

## II. This Court Cannot, and Should Not, Award the Preliminary Injunctive Relief Plaintiffs Seek.

If Plaintiffs' appeal is successful, the proper recourse is *not* to enter preliminary injunctive relief, but to remand this case to the District Court to make all factual findings necessary to grant the relief sought, including Plaintiffs' likelihood of success on the merits, whether Plaintiffs' have sufficiently alleged irreparable harm, and the balance of equities. This Court has repeatedly stated that "[i]t is a basic tenet of our legal system that, although appellate courts often review facts found by a judge or jury to ensure that they are not clearly erroneous, they do not make such findings in the first instance." *Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 56 F.3d 556, 575–76 (4th Cir. 1995). *See also*, *e.g.*, *Pierce v. N. Carolina State Bd. of Elections*, 97 F.4th 194, 217 (4th Cir. 2024) ("Obviously, we cannot find new facts on appeal"); *In re Naranjo*, 768 F.3d 332, 350–51 (4th Cir. 2014) ("Chevron has attempted to bypass the lower courts on this issue by asking us to make a factual finding . . . in the first instance on appeal. We should not and cannot do so. '[A]ppellate courts . . . do not make such factual findings in the first instance.'"). Plaintiffs' request that the Court do so in this case is improper and should be rejected.

**CONCLUSION**

For the foregoing reasons, the judgment of the District Court should be affirmed.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

By:    */s/ Jessica Dillon*
       Jessica F.W. Dillon
       Rebecca A. Koch
       Assistant United States Attorneys
       36 South Charles Street, 4th Floor
       Baltimore, Maryland 21201
       (410) 209-4892 (direct)
       (410) 962-2310 (fax)
       jessica.dillon@usdoj.gov
       rebecca.koch@usdoj.gov

July 2025

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 11,309 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Times New Roman 14-point font, a proportionally spaced typeface.

*/s/ Jessica Dillon*
Jessica Dillon

**CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Jessica Dillon*
Jessica Dillon